RAMIRO RODRIGUEZ *v.* E.D. CONSTRUCTION, INC., ET AL.
(AC 31115)

Bishop, Lavine and Foti, Js.

---

Argued October 26, 2010—officially released February 22, 2011

*James T. Baldwin*, with whom, on the brief, was *Marisa F. Schafer*, for the appellant (plaintiff).

*Robert Sciglimpaglia, Jr.*, for the appellee (named defendant).

*Lisa Guttenberg Weiss*, assistant attorney general, for the appellee (defendant second injury fund).

Opinion

FOTI, J. The plaintiff, Ramiro Rodriguez, appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) to dismiss his claim for benefits for injuries he suffered in an accident while installing a roof for the defendant E.D. Construction, Inc.[1] On appeal, the plaintiff claims that the board improperly affirmed the commissioner's finding that he was not an employee of the defendant

---

[1] The second injury fund is a defendant and joined E.D. Construction Inc., on its appellate brief. Travelers Property & Casualty Insurance and CNA Claims Plus are also defendants but have not participated in this appeal. For convenience, we refer in this opinion to E.D. Construction, Inc., as the defendant.

at the time of the accident.[2] We affirm the decision of the board.

The following facts and procedural history are relevant to this appeal. On June 14, 2003, the plaintiff was in the process of installing a rubber roof in Norwalk. During that installation, he attempted to dry with a torch the moist plywood foundation on which the rubber roof was to be adhered. Unbeknownst to the plaintiff, the plywood had been previously treated with a highly flammable adhesive, and his use of the torch produced an explosion and a fire. As a result, the plaintiff was engulfed in flames and fell from the two-story roof. Tragically, the plaintiff suffered life threatening burns to over 90 percent of his body, resulting in the amputation of his right arm and limiting the use of his left arm. Thereafter, the plaintiff filed a claim for workers' compensation benefits with the commissioner for the seventh district. The plaintiff claimed that at the time of the accident, he was an employee of the defendant, the roofing company that contracted to install the roof. The defendant denied compensability. Specifically, the owner of the defendant, Edward Devingo, asserted that he hired the plaintiff as a subcontractor to install the roof.[3]

Over the course of two years, the commissioner held nine formal hearings during which extensive evidence was introduced by both parties. In support of his claim that he was an employee of the defendant, the plaintiff testified that on the date of the accident, he was being paid $20 per hour by the defendant, that he was trained in the roofing trade by the defendant, that the defendant

---

[2] "The Workers' Compensation Act . . . General Statutes § 31-275 et seq., provides benefits only for those workers who have the status of 'employees' at the time of their injury." *Hanson* v. *Transportation General, Inc.*, 245 Conn. 613, 614, 716 A.2d 857 (1998).

[3] The defendant stopped operations at some point after the plaintiff's accident.

provided tools on his roofing jobs and provided transportation to and from work sites and that Devingo governed the manner of work at each of the various job sites. He also testified that although he was able to speak and to understand English "[a] little bit," his primary language was Spanish, and under no circumstances was he able to read or to write English. As a result, the plaintiff testified, he was unaware of, and did not understand, the consequences of executing certain documents in which he acknowledged that he was excluded from coverage under the Workers' Compensation Act (act), General Statutes § 31-275 et seq. He also testified that he executed a general liability insurance policy that named him as the insured policyholder and that Devingo originally advanced the premium on that general liability policy.

Devingo, on the other hand, testified that the plaintiff was able to speak, to understand and to read English capably and that (1) he did not train the plaintiff in the roofing trade, (2) the plaintiff provided his own tools and transportation to job sites, (3) he did not withhold taxes from the plaintiff's compensation, (4) he provided Internal Revenue Service form 1099 to the plaintiff in 1998 and 2000-2003, and (5) he paid the plaintiff according to each particular job rather than hourly. Devingo also testified that he did not control the plaintiff's work schedule, nor did he direct the manner of the plaintiff's work and was not on the work site on the day of the accident.[4] Additionally, Devingo testified that the plaintiff had his own roofing business and that he would perform jobs for third parties, independent of the defendant. Moreover, Devingo testified that he

---

[4] Devingo testified that once he subcontracted a roofing job to the plaintiff, the plaintiff would subsequently retain his own employees to assist in the completion of that job. Devingo testified that he had no input regarding the personnel that the plaintiff chose to hire for those jobs, nor did he have an arrangement for paying those individuals.

informed the plaintiff that to continue installing roofs for the defendant, the plaintiff would need to become an independent contractor and to carry his own liability insurance.[5] During this conversation, Devingo testified, he explained to the plaintiff that he was not covered under workers' compensation insurance. Devingo further testified that, although he recommended the John M. Glover Agency (Glover) to the plaintiff, he did not make any payments on behalf of the plaintiff regarding that policy. Devingo also testified that he informed the plaintiff that to maintain his working relationship with the defendant, he would need to execute waiver forms declaring himself to be exempt from coverage under the act because he was an independent contractor. The plaintiff complied with these directives from Devingo.

The commissioner also heard testimony from former workers of the defendant and two employees from Glover. Both Glover employees testified that the plaintiff had obtained liability insurance policies through their agency prior to the accident. The commissioner also heard testimony from three homeowners with whom the plaintiff had contracted to perform roofing projects, independent of the defendant.[6] In addition to the oral testimony, both parties introduced numerous

---

[5] Devingo testified that he informed the plaintiff expressly that, as a result of the execution of these documents, he was not covered under workers' compensation insurance and that he was covered only by his own liability insurance policy. The record also indicates that Devingo had been advised by his accountant to have workers who were performing roofing jobs for the defendant sign these exclusionary forms and obtain their own liability insurance. Devingo testified that the defendant's workers' compensation insurance policy had been cancelled because of a dispute between the defendant and its insurer regarding the number of employees who were employed by the defendant. See *ED Construction, Inc.* v. *CNA Ins. Co.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-06-4008420-S (August 27, 2009).

[6] Additionally, the commissioner heard testimony from Chris Rose, the manager of All-Star Carting of Norwalk (All-Star), who testified that All-Star rented a dumpster to the plaintiff for a job in Bridgeport.

exhibits, including (1) the plaintiff's business card, which stated, "Ramiro Roofing, Ramiro Rodriguez, owner. All types of roofs, wood shingles, copper work, etc. Free estimates"; (2) 1099 federal income tax forms for 1998 and 2000-2003 that were provided to the plaintiff by the defendant; (3) forms, signed by the plaintiff, stating that he acknowledged that he was not covered under the act; (4) a certified certificate of liability insurance naming the plaintiff as the insured policyholder providing coverage from March 29, 2003, to March 29, 2004; and (5) an estimate for roofing services from "Romero Rodriguez Roofing" dated October 31, 2002.[7] At the close of the hearings, both parties submitted proposed findings and memoranda of law in support of their respective positions.[8]

On January 10, 2008, the commissioner issued an eight page finding and dismissal of the plaintiff's claim. In that decision, the commissioner determined that the sole issue presented was whether the plaintiff "was an employee of [the defendant] on June 14, 2003, when he suffered horrific and catastrophic injuries . . . ." Under the heading "the following facts are found," the commissioner summarized the evidence introduced at trial into fifty numbered paragraphs, which were also

[7] Although the spelling of the plaintiff's first name on this invoice appears different from that on his business cards, the addresses provided on both documents are vitually identical.

[8] On October 24, 2007, the plaintiff submitted a seventy-two page proposed finding and award to the commissioner, which contained 531 findings of fact coupled with five conclusions. In support of his proposed finding and award, the plaintiff also submitted an eighteen page memorandum of law arguing that "[t]he [plaintiff] is clearly an employee of the [defendant]. The [defendant] had the right to control and did control the [plaintiff]."

Conversely, the defendant submitted a sixteen page proposed "findings and dismissal/brief" on October 29, 2010. In its brief, the defendant argued that the plaintiff was an independent contractor and that the defendant did not possess the right to control his installation of the rubber roof on the day of the accident.

interspersed with specific findings of fact.[9] Two explicit findings of fact found by the commissioner were that "on the date of the accident . . . the [plaintiff] was using his own tools and was in the process of drying moist plywood with a torch when the explosion and fire occurred" and that the plaintiff was being paid at an hourly rate at the time of the accident. In addition to these explicit findings of fact, the commissioner's decision also contained several implicit findings in which he discounted the plaintiff's testimony as not being credible. For example, the commissioner stated that "[t]he [plaintiff] testified that the alleged [e]mployer would drive [him] to the job site in various vehicles owed by [the defendant] and would set the hours and the places to be worked. The [plaintiff] testified that during the period of time that he was working with or for [the defendant], he did not do any outside jobs other than possibly one or two in his own name. *That is not so found by the undersigned commissioner.*" (Emphasis added.) With the exception of accepting the plaintiff's testimony in which he stated that he was paid hourly, the remainder of the commissioner's conclusions relating to the plaintiff's credibility were stated in similar fashion. Seven paragraphs contained in the finding and dismissal discredited the plaintiff's testimony with similar language indicating that the purported fact was not so found by the commissioner. For example, the commissioner did not find credible the plaintiff's testimony that (1) Devingo had paid for the plaintiff's liability insurance policy with Glover and then subtracted portions of the amount of the premium from the plaintiff's weekly checks, (2) the plaintiff did not understand the consequences of obtaining his own liability insurance or signing exclusionary documents

---

[9] Our close reading of the first part of the commissioner's decision reveals that many of his "findings" were mere recitations of witness testimony or synoptic reviews of the evidence introduced during the trial.

regarding his status as an independent contractor and (3) the plaintiff did not understand English.

At the conclusion of the finding of facts section, the commissioner set forth four definitive findings and conclusions in four separately lettered paragraphs that incorporated by reference the fifty paragraphs of evidence and facts cited previously. In that summation, the commissioner found: "Based on all of the evidence before me, I determine, conclude and find: (A) That prior to the date of the [plaintiff's] injuries he was able to speak and understand English and read English to some extent. (B) That notwithstanding the contradictory testimony regarding the method of payment [and] the control exercised by [the defendant] over the [plaintiff], the [plaintiff] of his own volition agreed to change his status from that of an employee with which he had begun his relationship with [the defendant] to that of an independent contractor. (C) That the [plaintiff] understood and reluctantly agreed to continue the relationship with [the defendant] after he was informed that he would become an independent contractor. (D) That the [plaintiff] knowingly signed the exclusionary forms for the workers' compensation commission and the agreements stating that he was an independent contractor and, thusly, he was not an employee on the date of his injuries. Wherefore it is so ordered, adjudged and decreed that the [plaintiff's] claim for benefits must be dismissed because he was not an employee on the date of his injuries." The plaintiff did not file a motion to correct, nor did he file a motion for articulation of the commissioner's dismissal of his claim. Instead, the plaintiff appealed to the board from the commissioner's dismissal.

On May 11, 2009, the board issued a memorandum of decision affirming the commissioner's dismissal of the plaintiff's claim. The board stated that to ascertain

whether the plaintiff was an employee or an independent contractor, "[t]wo central questions need to be resolved in the [plaintiff's] favor in order to award benefits . . . . The [plaintiff] must demonstrate he or she is credible and the [plaintiff] has the burden of proving the presence of an employer-employee relationship." The board concluded that the commissioner, in the face of conflicting evidence, resolved those questions to the detriment of the plaintiff. Specifically, the board found that "[t]he subordinate facts in the finding and dismissal indicate [that] the [plaintiff] was using his own tools and was acting in an autonomous manner at the time of the injury. . . . Since [e]mployment status is patently a factual issue, and is subject to a significant level of deference on review . . . we must respect the trial commissioner's findings . . . ."[10] (Citations omitted; internal quotation marks omitted.) In applying those subordinate facts to this case, the board ultimately concluded that the commissioner properly applied the right to control test articulated by our Supreme Court in *Hanson* v. *Transportation General, Inc.*, 245 Conn. 613, 624–25, 716 A.2d 857 (1998), finding that "the trial commissioner determined that the totality of factors did not support the finding of an employer-employee relationship." On June 30, 2009, the plaintiff filed a motion for articulation with the board.[11] The board denied that

[10] In its memorandum of decision, the board stated that "the [plaintiff] . . . was paid in a manner consistent with independent contractor status . . . ." Although this conclusion did not appear to comport with the commissioner's finding that the plaintiff was paid on an hourly basis, it does not appear to have been dispositive in the board's analysis of the commissioner's decision. In affirming the commissioner's dismissal, the board relied on the commissioner's finding that the plaintiff used his own tools, was acting in an autonomous manner at the time of the injury and that the plaintiff was not a credible witness. Assuming, arguendo, that the board's conclusion was erroneous, we conclude that that finding was harmless because there was sufficient evidence in the record to support the board's affirmance of the commissioner's decision. See *Henry* v. *Statewide Grievance Committee*, 111 Conn. App. 12, 28, 957 A.2d 547 (2008).

[11] In his motion for articulation, the plaintiff requested, in relevant part, that the board articulate the following: (1) whether it found that the commissioner

motion on July 14, 2009. This appeal followed. Additional facts will be set forth as necessary.

"We begin by setting forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. . . . The board sits as an appellate tribunal reviewing the decision of the commissioner. . . . [T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [T]he power and duty of determining the facts rests on the commissioner . . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . . Where the subordinate facts allow for diverse inferences, the commissioner's selection of the inference to be drawn must stand unless it is based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . .

"This court's review of decisions of the board is similarly limited. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [W]e must interpret [the commissioner's finding] with the goal of sustaining that conclusion in light of all of the other supporting evidence. . . . Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it." (Citations omitted;

"applied the 'right to control' analysis and, if so, what part or parts of the . . . [c]ommissioner's ruling supports that finding" and (2) "[i]f the . . . 'right to control test' was applied . . . what facts found by the . . . [c]ommissioner squarely address [the plaintiff's] credibility with respect to that legal standard." (Emphasis in original.) The plaintiff did not seek review of the board's denial of his motion for articulation pursuant to Practice Book § 66-5.

internal quotation marks omitted.) *Williams* v. *State*, 124 Conn. App. 759, 763–64, 7 A.3d 385 (2010).

In this appeal, the plaintiff claims that the board improperly affirmed the commissioner's finding that he was not an employee of the defendant at the time of the accident. The gravamen of the plaintiff's argument is that the commissioner improperly applied the right to control test by relying exclusively on one factor, namely, that the plaintiff executed certain forms in which he acknowledged that he was not covered under the act. After our careful review of the briefs and record before us, we cannot conclude that the commissioner incorrectly applied the right to control test when he determined that the plaintiff was not an employee of the defendant at the time of the accident.

"The determination of the status of an individual as an independent contractor or an employee is often diffi-cult . . . and, in the absence of controlling circum-stances, is a question of fact." (Internal quotation marks omitted.) *Chute* v. *Mobil Shipping & Transportation Co.*, 32 Conn. App. 16, 19–20, 627 A.2d 956, cert. denied, 227 Conn. 919, 632 A.2d 688 (1993). Thus, the plaintiff's claim requires us to review a finding of fact. See *Nation-wide Mutual Ins. Co.* v. *Allen*, 83 Conn. App. 526, 533, 850 A.2d 1047, cert. denied, 271 Conn. 907, 859 A.2d 562 (2004). "A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm convic-tion that a mistake has been committed. . . . In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. Our authority, when reviewing the findings of a judge, is

circumscribed by the deference we must give to deci-
sions of the trier of fact, who is usually in a superior
position to appraise and weigh the evidence. . . . The
question for this court . . . is not whether it would
have made the findings the trial court did, but whether
in view of the evidence and pleadings in the whole
record it is left with the definite and firm conviction
that a mistake has been committed." (Internal quotation
marks omitted.) Id., 533–34.

Additionally, "[w]e are mindful of the principles
underlying Connecticut practice in workmen's compen-
sation cases: that the legislation is remedial in nature
. . . and that it should be broadly construed to accom-
plish its humanitarian purpose. . . . It is still true, how-
ever, that the power and duty of determining the facts
rests on the commissioner, the trier of facts." (Citations
omitted.) *Adzima* v. *UAC/Norden Division*, 177 Conn.
107, 117, 411 A.2d 924 (1979).

"Our courts have long recognized that independent
contractors are not within the coverage of the . . .
[a]ct. . . . The fundamental distinction between an
employee and an independent contractor depends upon
the existence or nonexistence of the right to control
the means and methods of work." (Citation omitted;
internal quotation marks omitted.) *Chute* v. *Mobil Ship-
ping & Transportation Co.*, supra, 32 Conn. App. 19–20.
It is the totality of the evidence that determines whether
a worker is an employee under the act, not "subordinate
factual findings that, if viewed in isolation, might have
supported a different determination." *Hanson* v. *Trans-
portation General, Inc.*, supra, 245 Conn. 624–25. "For
purposes of workers' compensation, an independent
contractor is defined as one who, exercising an indepen-
dent employment, contracts to do a piece of work
according to his own methods and without being sub-
ject to the control of his employer, except as to the
result of his work." (Internal quotation marks omitted.)

*Chute* v. *Mobil Shipping & Transportation Co.*, supra, 20. "Many factors are ordinarily present for consideration, no one of which is, by itself, necessarily conclusive. While the method of paying by the hour or day rather than by a fixed sum is characteristic of the relationship of employer and employee, it is not decisive. . . . Nor is it decisive that the injured party uses his own tools and equipment. . . . The retention of the right to discharge, upon which the finding is silent, is a strong, but again not a controlling, indication that the relationship is one of employment." (Citations omitted.) *Bourgeois* v. *Cacciapuoti*, 138 Conn. 317, 321, 84 A.2d 122 (1951). Other persuasive factors that a person is holding oneself out to be an independent contractor include the issuance of 1099 federal tax forms; see *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 699, 651 A.2d 1286 (1995); and engaging independently in business with third parties and doing business apart from the putative employer under a different name. See *Chute* v. *Mobil Shipping & Transportation Co.*, supra, 20–21. With those principles and the clearly erroneous standard of review to guide our inquiry, we now turn to the commissioner's finding and dismissal.

After our thorough review of the record, we conclude that the evidence presented was sufficient to support the commissioner's finding that the plaintiff was an independent contractor and, thus, not an employee of the defendant at the time of the accident. Although the commissioner's finding and dismissal was not artfully drafted,[12] we are satisfied that the evidence before the

---

[12] Section 31-301-3 of the Regulations of Connecticut State Agencies provides: "The finding of the commissioner should contain only the ultimate relevant and material facts essential to the case in hand and found by him, together with a statement of his conclusions and the claims of law made by the parties. It should not contain excerpts from evidence or merely evidential facts, nor the reasons for his conclusions. The opinions, beliefs, reasons and argument of the commissioner should be expressed in the memorandum of decision, if any be filed, so far as they may be helpful in the decision of the case." See also *Cable* v. *Bic Corp.*, 270 Conn. 433, 440–41, 854 A.2d 1057 (2004).

commissioner could have supported the finding that the plaintiff held himself out to be an independent contractor and, thus, is not clearly erroneous. See id.

In the present case, the burden rested with the plaintiff to prove that he was an employee. *Bourgeois* v. *Cacciapuoti*, supra, 138 Conn. 321. In his decision, the commissioner explicitly found that the plaintiff was using his own tools at the time of the accident and that he also was paid at an hourly rate. Although, under different circumstances, those factors could appear to be at odds in determining the plaintiff's employment status, the commissioner's finding that the plaintiff was an independent contractor is supported when viewed in light of all of the evidence introduced during the hearings. For example, the commissioner was presented with evidence that the plaintiff (1) owned his own roofing business, (2) hired his own workers to complete roofing jobs for the defendant, (3) completed roofing jobs for the defendant in an autonomous manner, (4) contracted and completed roofing jobs independent of the defendant, (5) independently executed a general liability insurance policy and (6) received annual 1099 federal tax forms from the defendant. Last, it is clear from the commissioner's finding and dismissal that he did not find the plaintiff credible, as evidenced by his multiple findings that discredited the plaintiff's testimony. See *Daubert* v. *Naugatuck*, 267 Conn. 583, 590–91, 840 A.2d 1152 (2004) (plaintiff unable to sustain

Notwithstanding the fact that the commissioner's findings and dismissal strayed from the template typically followed in workers' compensation decisions; see 2 A. Sevarino, Connecticut Workers' Compensation After Reforms (3d Ed. 2008) exhibit 75, pp. 211–15; the commissioner's factual finding that the plaintiff was an independent contractor must stand unless found to be clearly erroneous. See *Nationwide Mutual Ins. Co.* v. *Allen*, supra, 83 Conn. App. 533–34. Coupling the fact that the commissioner did not find the plaintiff credible, with the evidence contained in the record, we cannot conclude that the commissioner's finding was clearly erroneous. See *Daubert* v. *Naugatuck*, 267 Conn. 583, 590–91, 840 A.2d 1152 (2004).

burden of proof when workers' compensation commissioner found plaintiff's testimony not to be credible).

The plaintiff argues that the commissioner improperly rendered his determination on the basis of one factor rather than the totality of the evidence. To support this premise, the plaintiff relies on paragraph D of the commissioner's conclusion that stated that "the [plaintiff] knowingly signed the exclusionary forms for the workers' compensation commission and the agreements stating that he was an independent contractor and, *thusly*, he was not an employee on the date of his injuries." (Emphasis added.) The plaintiff asserted that the commissioner's use of the adverb "thusly" definitively established that the commissioner relied exclusively on that one factor.[13] We disagree.

First, the commissioner was not *required* to explain, pursuant to § 31-301-3 of Regulations of Connecticut State Agencies, how he arrived at his final determination after culling through the evidence.[14] See *Cable* v.

[13] The plaintiff also argues that he was prejudiced when the commissioner refused to take administrative notice of a similar workers' compensation commission decision that also involved the defendant. In addition, the plaintiff asserts that this refusal further illustrated the commissioner's failure to consider all the relevant factors in rendering his decision. We are not persuaded.

The decision whether to take administrative notice of prior proceedings falls squarely within the discretion of the commissioner. See *Herbert* v. *RWA, Inc.*, 48 Conn. App. 449, 458, 709 A.2d 1149, cert. denied, 246 Conn. 901, 717 A.2d 239 (1998). In the present case, the commissioner properly exercised his discretion not to take administrative notice of a prior decision that might have unduly influenced him, stating: "I don't think it would be proper for me to take administrative notice of [that decision] . . . . I mean I'm hearing the evidence here and it's a different individual . . . ." As we noted previously in this opinion, there was sufficient evidence in the record to support the commissioner's finding and dismissal and there is no evidence to suggest that the commissioner relied on incorrect information. Accordingly, we conclude that, in exercising his discretion, the commissioner did not prejudice the plaintiff. See *Herbert* v. *RWA, Inc.*, supra, 458.

[14] Although the commissioner was not required to explain how he applied the right to control test, we note that this standard is not an attendant license for workers' compensation commissioners to prepare poorly drafted findings in rendering their decisions.

*Bic Corp.*, 270 Conn. 433, 440–41, 854 A.2d 1057 (2004). Second, the plaintiff's argument ignores the preceding heading under which the commissioner states unequivocally that "[b]ased on *all the evidence* before me, I determine, conclude and find . . . ." (Emphasis added.) The plaintiff also misinterprets the factual finding, in paragraph B, in which the commissioner found that notwithstanding contradictory evidence, the plaintiff, "of his own volition," agreed to change his employment status to that of an independent contractor. On the basis of the foregoing, it is not unreasonable to infer that the commissioner believed that the plaintiff held himself out to be an independent contractor and that this determination was based on all the evidence before him. Although we agree with the plaintiff that had the commissioner relied exclusively on the execution of the exclusionary waiver forms to guide his analysis, such a reliance would have resulted in an incorrect application of the law; see *Latimer* v. *Administrator*, 216 Conn. 237, 251–52, 579 A.2d 497 (1990) (signed agreement between worker and employer characterizing worker as independent contractor not dispositive of employment status); we conclude that this argument is not supported when viewed in conjunction with the entire record. As we have stated, there was ample evidence in the record to support the finding that the plaintiff was an independent contractor. Whether we agree with that finding is not relevant to our review. An equally important principle in our review is that we cannot conclude that the commissioner's finding is clearly erroneous on the basis of subordinate factual findings that, even if viewed in isolation, might have supported a different determination.[15] See *Hanson* v. *Transportation General, Inc.*, supra, 245 Conn. 624.

---

[15] Additionally, we note that the plaintiff thoroughly addressed the application of the right to control analysis to the particular facts of this case in his proposed finding and award and memorandum of law to the commissioner. See footnote 8 of this opinion. In the absence of any indication to the contrary, we conclude that the commissioner properly applied that correct legal standard. See *Cable* v. *Bic Corp.*, supra, 270 Conn. 441–42.

In light of the foregoing, we cannot conclude that the subordinate facts and evidence do not support the commissioner's decision that at some point prior to the accident, the plaintiff made a conscious choice to change his employment status from that of employee to independent contractor. Moreover, we cannot conclude that the commissioner's determination relied on an inference that was illegally or unreasonably drawn from those facts or the evidence in the record. Nor can we as a "reviewing court . . . set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by [this] court because of a belief that the one chosen by the [commissioner] is factually questionable." (Internal quotation marks omitted.) *Daubert* v. *Naugatuck*, supra, 267 Conn. 590. Accordingly, we are unable to conclude that the board erred when it found that the commissioner's dismissal of the plaintiff's claim was not clearly erroneous.

The decision is affirmed.

In this opinion the other judges concurred.