NATIONAL FIRE INSURANCE COMPANY
OF HARTFORD *v.* BEAULIEU
COMPANY, LLC
(AC 33612)

Gruendel, Bear and Espinosa, Js.

Argued September 18, 2012—officially released February 5, 2013

*Michael P. Barry*, for the appellant (defendant).

*Joshua S. Chapps*, for the appellee (plaintiff).

*Opinion*

ESPINOSA, J. The defendant, Beaulieu Company, LLC, appeals from the judgment of the trial court rendered in favor of the plaintiff, National Fire Insurance Company of Hartford, also known as the CNA Insurance Companies, in connection with the underlying civil action in which the plaintiff sought from the defendant unpaid premiums for workers' compensation insurance coverage. The defendant claims that it was clearly erroneous for the trial court to find (1) that three workers[1] who performed roofing work for the defendant were employees of the defendant rather than independent contractors, (2) that even if these three workers and two others[2] were not employees, they engaged in work that could make the plaintiff liable to provide workers' compensation benefits under the relevant policies and (3) assuming the workers had employees, the employees were not independently insured because the defendant provided certificates of insurance during the hearing in damages showing that the workers and any of their employees were already insured. We affirm the judgment of the trial court.

The following facts as found by the court are relevant to our resolution of this appeal. The defendant is a roofing contractor that performs work primarily for commercial construction projects. It uses its own

[1] The defendant's first claim challenges the court's factual findings regarding Curt Squires, David Slota and Mark Lepine.

[2] The defendant's second claim also challenges the court's factual findings regarding M. J. Poirier and SkyTech, LLC. In certain parts of the record, M. J. Poirier is referred to as M. J. Poirier, doing business as Poirier Roofing. For purposes of this appeal, we refer to all of the challenged individuals and entities collectively as the workers and individually by name where appropriate.

employees, contract labor and subcontractors to conduct its work. The plaintiff, a workers' compensation insurance carrier, provided workers' compensation coverage to the defendant under two policies for the periods of March 26, 2005, to March 26, 2006, and April 3, 2006, to June 26, 2006.[3]

In its memorandum of decision, the court stated: "Because it is difficult to predict exactly how much labor will be needed during an upcoming policy period and because workers' compensation insurance premiums are based on the type of labor and amount of time expended by various workers for a particular job, the insurer prepares an estimated bill at the beginning of the policy term. After the term expires, the insurer audits the insured's payroll and expenditures to calculate the precise coverage which was provided and the appropriate premium for that coverage. Depending on whether the estimated premium was excessive or deficient, a refund or a supplemental bill issues." "The audit determines the amount of compensation paid during the policy term for each occupation and uses a formula to arrive at the adjusted premium, retrospectively." The insurer calculates the final premium using an insurance industry manual[4] that assigns specific rates for different occupations, which vary based on the risk of injury associated with that occupation.

---

[3] The plaintiff issued workers' compensation coverage to the defendant from March 26, 2005, to March 26, 2006, under policy number 6S58UB-7443B13-6-05 and from April 3, 2006, to April 3, 2007, under policy number 6S58UB-4965C62-3-06. The second policy was cancelled, effective June 26, 2006.

[4] The premiums in this case were calculated using an insurance industry publication titled the "Basic Manual for Worker's Compensation and Employer Liability Insurance." The pertinent section regarding the calculation of premiums for subcontractors, rule IX C, states in relevant part: "The contractor shall furnish satisfactory evidence that the subcontractor had workers compensation insurance in force covering the work performed for the contractor. For each subcontractor for which such evidence is not furnished, additional premium shall be charged on the policy that insured the contractor . . . ."

"Part five C of the insurance agreement [between the plaintiff and the defendant] bases the premium recalculation on the remuneration paid to both employees and '[a]ll other persons engaged in work that could make [the plaintiff] liable' to pay workers' compensation benefits.[5] [S]ubparagraph two of part five C exempts remuneration from the adjusted premium computation if the defendant submits proof that the employees 'of these [other] persons lawfully secured their workers compensation obligations.' "

On June 24, 2009, the plaintiff sued the defendant for unpaid premiums owed for workers' compensation coverage it provided to the defendant under the previously mentioned policies. In its complaint, the plaintiff alleged that the defendant breached its insurance contract with the plaintiff by failing to pay the premiums for these policy periods. The dispute between the parties concerns whether certain workers to which the rate was applied ought to have been included in the premium

---

[5] In both of the policies at issue in this appeal, part five C of the insurance agreement states in relevant part: "Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the service of:

"1. All your officers and employees engaged in work covered by this policy; and

"2. All other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations."

Part one of the insurance agreement states in relevant part: "We will pay promptly when due the benefits required of you by the workers compensation law."

Part five A of the insurance agreement states in relevant part: "All premiums for this policy will be determined by our manuals of rules, rates, rating plans and classifications." This section of the policy appears to incorporate by reference the aforementioned manual used to calculate the premiums at issue in this case.

recalculation. The parties stipulated that the defendant owed $49,807 in premiums, but disputed an additional $46,529 in premiums for workers' compensation coverage provided to the workers; see footnote 2 of this opinion; and to Mike Rome,[6] all of whom performed roofing work for the defendant. On March 2, 2011, the court held a hearing in damages to address the disputed premiums.

In a memorandum of decision issued on May 20, 2011, the court concluded that the coverage provided by the plaintiff to the defendant embraced employees of the defendant, contract labor of the defendant and employees of subcontractors of the defendant, unless the subcontractors provided workers' compensation coverage for its employees. The court stated: "[T]he plaintiff is entitled to include in its premium recalculation all persons or entities, whether employees of the defendant or not, for whom the plaintiff may be liable to pay workers' compensation benefits, unless the defendant proves that such coverage was otherwise provided." The defendant's records showed that the workers did not have independent workers' compensation insurance during the policy terms at issue. The defendant submitted to the plaintiff certificates of insurance for the workers, but the certificates were silent as to who was covered under the independent insurance policies. An audit manager who oversaw the defendant's account for the plaintiff investigated each policy and determined that the policies failed to cover the workers or failed to provide coverage during the effective period of the plaintiff's policies that are the bases for its breach of contract claim.

Except as related to Rome, the court found that "even if all of the above-named [workers] were independent

---

[6] Rome is not a subject of this appeal because the trial court concluded that there were no additional premiums owed for the coverage provided to him.

contractors rather than employees, the plaintiff was entitled to additional premiums for their work with the defendant because they all fit within part five C 2 of the insurance policy in that they engaged in work that could make the plaintiff liable to provide workers' compensation benefits." (Internal quotation marks omitted.) In light of its findings, the court ordered the defendant to pay $46,513[7] in damages to the plaintiff. On June 6, 2011, the defendant filed a motion to reargue the court's May 20, 2011 judgment. The court denied the motion to reargue on June 7, 2011. The defendant filed the present appeal on June 23, 2011. Additional facts will be set forth as necessary.

We first set forth the well established legal principles that govern insurance coverage disputes and the applicable standard of review that governs the defendant's claims. "[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo. . . . An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract . . . . In accordance with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . Under those circumstances, the policy is to be given effect according to its terms. . . . When interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if

---

[7] The final amount awarded to the plaintiff excluded $16 in premiums that the court attributed to wages paid to Rome, for whom the court found there were no additional premiums owed.

possible, give operative effect to every provision in order to reach a reasonable overall result. . . .

"In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . .

"[A] trial court's resolution of factual disputes that underlie coverage issues is reviewable on appeal subject to the clearly erroneous standard. . . . Such a finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [A] finding is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Thus, [i]t is well established that [i]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Citations omitted; internal quotation marks omitted.) *National Grange Mutual Ins. Co.* v. *Santaniello*, 290 Conn. 81, 88–91, 961 A.2d 387 (2009).

I

The defendant first claims that there was insufficient evidence from which the court could have found that Curt Squires, David Slota and Mark Lepine were the defendant's employees rather than independent contractors, and, therefore, they should not have been included in the plaintiff's premium audit. Specifically, the defendant claims that the only theory of recovery advanced by the plaintiff was that these three individuals were the defendant's employees and, thus, were covered under part five C 1 of the insurance policy. The defendant argues that because there was insufficient evidence to support this theory of recovery, it was clearly erroneous for the court to find that the plaintiff met its burden of demonstrating they were employees. We are not persuaded.

Based upon our careful review of the court's memorandum of decision, we conclude that the court did not make an express finding that the workers were employees but, rather, found only that they "all fit within part five C 2 of the insurance policy in that they engaged in work that could make the plaintiff liable to provide workers' compensation benefits." (Internal quotation marks omitted.) In its memorandum of decision, the court rejected the defendant's assertion that "the plaintiff is confined by its complaint to damages arising from additional premiums owed as a result of remuneration to employees only." The court held that the plaintiff's allegation that the defendant failed to pay the premiums due under the policy was "sufficiently broad to apprise the defendant that the plaintiff seeks damages for all additional premiums owed as a consequence of the audits." We agree with the court and reject the defendant's claim on appeal that the plaintiff's recovery of unpaid premiums required the plaintiff to demonstrate that the individuals who performed work for the defendant fell under part five C 1 of the policies.

See footnote 5 of this opinion. As we will explain in part II of this opinion, it was sufficient for the court to find that the workers fell under the policies because they engaged in work that could make the plaintiff liable to provide workers' compensation benefits. Accordingly, we do not find merit in the defendant's first claim.

II

Next, the defendant claims that it was clearly erroneous for the court to find that even if all five of the workers were not employees, they exposed the plaintiff to possible liability because they engaged in work that could make the plaintiff liable to provide workers' compensation benefits. Specifically, the defendant claims that the workers were sole proprietors, and, because there was no evidence that any of the workers affirmatively elected to be covered under the Workers' Compensation Act (act), General Statutes § 31-275 et seq., it was clearly erroneous for the court to find that the workers exposed the plaintiff to liability under part five C 2 of the policy. We disagree.

Evidence of the following facts relevant to this claim was presented at the hearing in damages. The audit manager who oversaw the defendant's account for the plaintiff included potential exposure in his audit for Squires, Slota and Lepine as contract laborers—employees paid without payroll tax withholding. The audit manager included potential exposure in his audit for SkyTech, LLC, and M. J. Poirier as uninsured subcontractors with employees. Squires, Slota and Lepine did roofing work for the defendant and worked on a number of different jobs. Squires, Slota and Lepine received individual payments by the hour or by square.[8] Payment by the hour is indicative of employee status. The defendant would direct some of the workers on how they

[8] "Square" is a term used in the roofing industry to determine the size of the job and indicates payment for piece work.

should do work at times so the defendant could ensure that the work was done according to its contract with the owner of a particular property. The defendant would verify that the work done by the workers was performed properly before issuing payment. Slota was paid in two different ways during the policy terms. During one portion of the term, the defendant paid him as an employee, and he received a W-2 form indicating his tax withholdings. During another portion of the term, the defendant paid him outside of the regular payroll on a 1099 basis.[9] At least one time sheet or invoice from Lepine documented work by two men for one day of roof repair.

Under the act, an employer must secure workers' compensation for its employees. General Statutes § 31-284. Section 31-275 (9) (A) (i) defines an "employee" as any person who has "entered into or works under any contract of service or apprenticeship with an employer . . . ." "To further its purposes, [the] language [of the act] is not that of restriction or limitation, but all-embracing. . . . [I]t applies to *all contracts* of employment, and this was intended to mean . . . by *whomsoever made.* . . . [T]he act must be interpreted liberally to achieve its humanitarian purposes . . . [and] this court should not impose limitations on the benefits provided for a . . . worker that the statute itself does not clearly specify." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Doe* v. *Yale University*, 252 Conn. 641, 674–75, 748 A.2d 834 (2000).

General Statutes § 31-291 provides in relevant part: "When any principal employer procures any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done is a part or process in the trade

---

[9] When Slota was paid on a 1099 basis, he did not have taxes withheld from his payment.

or business of such principal employer, and is performed in, on or about premises under his control, such principal employer shall be liable to pay all compensation under this chapter [of the act] to the same extent as if the work were done without the intervention of such contractor or subcontractor. . . ." "[I]f an employer . . . meets the three requirements of the first sentence of [§ 31-291],[10] it becomes liable to pay workers' compensation benefits to an employee of its independent subcontractor, who was injured in the course of his employment." *Pelletier* v. *Sordoni/Skanska Construction Co.*, 264 Conn. 509, 519–20, 825 A.2d 72 (2003).

"The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control the means and methods of work. . . . It is the totality of the evidence that determines whether a worker is an employee under the act, not subordinate factual findings that, if viewed in isolation, might have supported a different determination." (Citation omitted; internal quotation marks omitted.) *Rodriguez* v. *E.D. Construction, Inc.*, 126 Conn. App. 717, 728, 12 A.3d 603, cert. denied, 301 Conn. 904, 17 A.3d 1046 (2011). "The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent." (Internal quotation marks omitted.) *Doe* v. *Yale University*, supra, 252 Conn. 681. "Whether an employer-employee relationship exists for purposes of the act is a question

---

[10] "[The] three requirements [of the first sentence of § 31-291] have been summarized as follows: (1) the relation of principal employer and contractor must exist in work wholly or in part for the former; (2) the work must be on or about premises controlled by the principal employer; [and] (3) the work must be a part or process in the trade or business of the principal employer." (Internal quotation marks omitted.) *Pelletier* v. *Sordoni/Skanska Construction Co.*, 264 Conn. 509, 519 n.7, 825 A.2d 72 (2003).

of the right to control, and not whether an employee is a direct employee . . . ." Id., 683.

Because both subsections of part five C of the policies describe categories of persons whose remuneration the plaintiff may include in its recalculation of the defendant's premium, the court needed to find that each worker fell within the definition of part five C 1 *or* part five C 2. See footnote 5 of this opinion. As noted previously, the court found that "the plaintiff is entitled to include in its premium recalculation all persons or entities, whether employees of the defendant or not, for whom the plaintiff may be liable to pay workers' compensation benefits, unless the defendant proves that such coverage was otherwise provided." It found that "even if all of the above-named individuals, [including Squires, Slota and Lepine], were independent contractors rather than employees, the plaintiff was entitled to additional premiums for their work with the defendant because *they all fit within part five C 2 of the insurance policy in that they engaged in work that could make the plaintiff liable to provide workers' compensation benefits.*"[11] (Emphasis added.)

In view of the evidence and pleadings in the whole record, we conclude that the court did not err in making

[11] We note that, in finding that all of the disputed workers "fit within part five C 2 of the insurance policy in that they engaged in work that could make the plaintiff liable to provide workers' compensation benefits"; (internal quotation marks omitted); the court stated that such a finding would be accurate even if the workers were independent contractors. Insofar as this may be interpreted as an indication that the plaintiff could be liable to provide workers' compensation benefits to an independent contractor, we note the long-standing precedent of this court that independent contractors are not within the coverage of the Workers' Compensation Act. See *Rodriguez* v. *E.D. Construction, Inc.*, supra, 126 Conn. App. 728. Considered in the context of the court's entire memorandum of decision, we find any confusion arising from this portion of the court's decision harmless because the court evinced a clear understanding that coverage under the policy was limited to the defendant's employees, contract labor employees of the defendant and employees of subcontractors of the defendant.

this finding. Preliminarily, the defendant's entire claim is predicated on its conclusory contention that the workers were sole proprietors, and, therefore, were not subject to the act unless they affirmatively elected to be covered. Sole proprietor is not specifically defined under the act. See General Statutes § 31-275. Black's Law Dictionary (9th Ed. 2009) defines "sole proprietorship" as "[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity" or "[o]wnership of such a business." Our review of the record does not reveal any evidence that supports the conclusion that these workers necessarily fell within the definition of a sole proprietor. Without more than the defendant's bald assertion that these workers were sole proprietors, we conclude that the court did not err in finding that the plaintiff could have been exposed to liability under the policies, even in the absence of evidence demonstrating that the workers affirmatively elected to be covered under the act.

As the court correctly acknowledged in its memorandum of decision, the coverage provided under the policies "embraced employees of the defendant, contract labor of the defendant, and employees of subcontractors of the defendant unless the subcontractors provided for such coverage" because the defendant could be required to pay workers' compensation benefits to any of these categories of workers under Connecticut workers' compensation law. See General Statutes § 31-284; General Statutes § 31-275 (9) (A) (i) (requiring employers to provide workers' compensation to employees, defined as any person who "has entered into or works under any contract of service or apprenticeship with an employer"); General Statutes § 31-291 (requiring principal employers to procure workers' compensation for employees of employer's subcontractors when relation of principal employer and contractor

exists in work for principal employer, work is on or about premises controlled by principal employer and work is part or process in trade or business of principal employer).

After our thorough review of the record, we conclude that there is sufficient evidence from which the court could have found that these workers performed work for the defendant in a capacity that could have exposed the plaintiff to liability to provide workers' compensation benefits under the policy. Even if the workers were not employed by the defendant as direct employees on its regular payroll,[12] there was evidence that they worked under a contract of service with the defendant and that the defendant had a sufficient degree of the right to control the workers, such that they were employees or subcontractors with employees for purposes of the act. See *Rodriguez* v. *E.D. Construction, Inc.*, supra, 126 Conn. App. 728; *Samaoya* v. *Gallagher*, 102 Conn. App. 670, 676–77, 926 A.2d 1052 (2007) ("The term 'control' in [the context of § 31-291] has a specific meaning. It is merely descriptive of the work area and is used instead of such words as 'owned by him' or 'in his possession' in order to describe the area in a more inclusive fashion."). In light of the foregoing, we conclude that the court did not err in finding that the plaintiff was entitled to include these workers in its premium audit because they engaged in work that could have made the plaintiff liable under the policies.

### III

Last, the defendant claims that, assuming the workers had employees, it was clearly erroneous for the court to find that the employees were not independently insured because it provided certificates of insurance during the

---

[12] With respect to Slota, there is evidence that, at certain times during the policy terms, the defendant did, in fact, pay him as a direct employee on the regular payroll with tax withholdings.

hearing in damages showing that the workers and any of their employees were already insured. The defendant argues that, therefore, these workers should not have been included in the premium audit because, upon its showing of proof of coverage, it was exempt, per the terms of the policy, from having them included in the audit. See footnote 5 of this opinion. We are not persuaded.

In this case, the court credited testimony from the plaintiff's audit manager who determined that the defendant's records showed that the workers failed to have independent workers' compensation insurance during the policy terms. Specifically, the court had before it the certificates at issue and credited testimony that the certificates of insurance submitted for the workers were silent as to who was covered under the policies noted in the certificates and that the relevant policies did not cover the workers or failed to provide coverage during the effective period of the plaintiff's policies. The court was entitled, as the trier of fact, to credit the audit manager's testimony and disregard other conflicting testimony from the defendant. See *National Grange Mutual Ins. Co.* v. *Santaniello*, supra, 290 Conn. 90–91. As such, it was reasonable for the court to find that the defendant failed to provide proof that the workers in this case lawfully secured their workers' compensation obligations for their employees, and, therefore, failed to exempt itself from having them included in the plaintiff's premium audit. Because the court was in the best position as the fact finder to assess the credibility of the witnesses at the hearing in damages and draw inferences therefrom, we, as the reviewing court, defer to the court's finding in this regard and find no error.

The judgment is affirmed.

In this opinion the other judges concurred.