2005 VT 45

## In re David SLEIGH on Behalf of Unnamed Motorists Accused of DWI Infractions

[872 A.2d 363]

No. 04-092

¶ 1. March 23, 2005. This appeal stems from a petition filed by David Sleigh with the Vermont Board of Health (Board) challenging the Vermont Commissioner of Health's decision to authorize law enforcement to turn off the data-collection function of DataMaster instruments, which are used to calculate Breath Alcohol Concentration (BAC) in DUI cases. Following a hearing, the Board required the Commissioner to reactivate the data-collection function of the DataMaster instruments and to establish a BAC Breath Testing Task Force. On appeal, the State claims that (1) petitioner lacks standing to challenge the Commissioner's decision; (2) the Commissioner's decision was entitled to deference and should be

upheld; and (3) the Board exceeded its authority in ordering the Commissioner to create a task force. We do not reach the State's claims because we hold that the Board had no jurisdiction to review the Commissioner's notice and, further, that it was not an appealable decision. Therefore, we vacate the Board's decision and dismiss the appeal.

¶ 2. This controversy has its roots in changes the Legislature made in 1989 to update the process for adjudicating DUI cases. 1989, No. 68 (codified as amended at 23 V.S.A. §§ 1200-1215). Specifically, the Legislature created a civil infraction for DUI with a streamlined procedure and approved use of infrared spectroscopy for breath alcohol analysis. 23 V.S.A. §§ 1203(d), 1205.

¶ 3. Under authority granted in the legislation, see 23 V.S.A. § 1203(d) ("The department of health shall use rule making procedures to select its method or methods."), the Department of Health promulgated a rule, specifying the approved methods for breath analysis. Breath and Blood Analysis Rule § C.I., 4 Code of Vermont Rules 13 140 003-2 (1997) [hereinafter Breath and Blood Analysis Rule]. The rule delineates that "[t]he analytical instrumentation and procedures used for analysis of breath alcohol content for evidentiary purposes shall be approved by the Commissioner of Health." Breath and Blood Analysis Rule § C.I.6; see *State v. Rolfe*, 166 Vt. 1, 9, 686 A.2d 949, 955 (1996) (upholding delegation to Commissioner to approve machinery). The Commissioner then approved analytical instruments, including the DataMaster, for measurement of BAC through infrared spectrophotometry, and also approved procedures for the instruments' use as outlined in the Vermont Criminal Justice Training Council manual. See *State v. McQuillan*, 2003 VT 25, ¶¶ 10-14, 175 Vt. 173, 825 A.2d 804 (rejecting argument that procedures in manual must be adopted through formal rule-making).

¶ 4. The DataMaster is a device that law enforcement officers can use on site to obtain BAC levels from suspects based upon a breath test. The DataMaster measures alcohol concentration by calculating how a beam of infrared energy passes through the breath sample compared to how it passes through ambient room air. If alcohol is present in the breath sample, some of the energy will be absorbed, and this loss of energy can be correlated to the alcohol concentration. To operate the DataMaster, a law enforcement official must go through a series of steps to properly prepare and calibrate the machine.

¶ 5. The DataMaster includes a function for instrument data collection that stores in the machine data from previous tests and any errors that occurred during testing. The stored data, covering up to seventy previous tests, can later be retrieved via a modem to an offsite computer or directly to a laptop on site. If the information is not downloaded, the machine will begin to overwrite the recorded data. The original intent of this function was to collect data for demographic and statistical analysis, but, due to lack of resources, the department never implemented such analyses. In 1999, DUI defense attorneys began requesting the data for use at trial. Primarily, these results are used to "raise doubts about the validity and reliability of specific BAC test results because of either apparent machine operator violation of testing protocol or machine performance anomaly."

¶ 6. The data-storage function of the DataMaster is not mentioned in health department rules or in the approved analytical instrumentation procedures. Nor is it mentioned in the Vermont Criminal Justice Training Council Training Manual on the Infrared Breath Testing Device. Although the record

indicates that the function is in operation on DataMaster machines generally, the record does not reveal how this occurred. There is no indication, for example, that the function is in operation because of a decision by the Commissioner of Health.

¶ 7. On May 19, 2003, the Commissioner authorized the Health Surveillance Division Director to issue a "Notice of DataMaster Function Termination," stating that "the BAC DataMaster instrument data collection feature will be turned off." The notice stated five reasons for terminating the memory function, including that the data were not being used by the department and that requests were burdensome on the department's resources. Regarding use in defense to DUI charges, the notice also claimed that "the data provided in response to such inquiries has not been considered in and of itself significant enough to exonerate the defendant of the DUI charge." The record does not reveal who received this notice.

¶ 8. Petitioner, an attorney for persons charged with and convicted of DUI, grieved this decision to the Board under the appeal provision of 18 V.S.A. § 128, asking for a hearing and, under 18 V.S.A. § 129, a stay of the decision pending review. The Board accepted jurisdiction and held a hearing on the merits. The Board listened to two days of testimony and accepted evidence from both petitioner and the State, after which it issued a decision in petitioner's favor. The Board found the Commissioner's decision-making process pertaining to the data-collection function of the DataMaster machines "to be flawed and inadequate," and concluded that, contrary to the Commissioner's assertion, the function was valuable to DUI defense. The State appealed to this Court.

¶ 9. We conclude that the Board lacked jurisdiction to review the Commissioner's authorization to law enforcement to turn off the data-storage function. In addition, we hold that this authorization was not an agency action subject to review.

¶ 10. The authority of both the Board and the Commissioner are delegated by the Legislature and defined by statute. Although we give deference to the construction of a statute by an agency responsible for administering it, statutory interpretation is a question of law, and we cannot affirm an unjust or unreasonable interpretation of a statute. See *Butler v. Huttig Bldg. Prods.*, 2003 VT 48, ¶ 9, 175 Vt. 323, 830 A.2d 44. We will enforce the terms of the statute if they are plain on their face, and we determine legislative intent from the words of the statute itself. *Burlington Elec. Dep't v. Vt. Dep't of Taxes*, 154 Vt. 332, 335-36, 576 A.2d 450, 452 (1990).

¶ 11. The only authority for actions of the Commissioner with respect to DUI breath testing comes from chapter 13 of Title 23 — specifically, 23 V.S.A. § 1203. Independent of the Commissioner's role in the DUI program, the Commissioner has authority over many aspects of public health and health care under Title 18. See, e.g., 18 V.S.A. § 107(a) (directing Commissioner to make "inspections, investigations and inquiries" concerning public health). The Board is also created and authorized in Title 18. 18 V.S.A. §§ 101-102. Its adjudicative jurisdiction is specified in the same title: "Any person aggrieved by an act, decision, or order of the commissioner, local board of health or selectmen *pursuant to this title* may appeal to the board within 30 days." 18 V.S.A. § 128(a) (emphasis added).

¶ 12. It is apparent from these statutory delegations that the decision of the Commissioner at issue here, if statutorily authorized at all, is based on his powers and responsibilities as granted in chapter 13 of Title 23, and not those authorized by Title 18. Thus, the provision of Title 18 that generally allows appeals to the Board from "an act, decision, or order of the commissioner" is inapplicable be-

cause it is limited to those made "pursuant to [Title 18]." 18 V.S.A. § 128(a). Therefore, the Board lacked jurisdiction to review any decision related to DUI breath testing.

¶ 13. We do not ground our decision solely on the absence of jurisdiction in the Board. Plaintiff first sought judicial review in the superior court under V.R.C.P. 75, and the State argued that plaintiff had failed to exhaust administrative remedies by appealing to the Board. Plaintiff voluntarily discontinued the superior court action to appeal to the Board, and the State did not assert lack of jurisdiction either in the Board or in this Court. To end this controversy, we further hold that the case does not involve a reviewable agency action, whether review is sought in the Board or the superior court.

¶ 14. There is no law that requires law enforcement to utilize the DataMaster data-collection function, and the Commissioner is under no statutory duty to either maintain or disable this function. Indeed, the Commissioner took no action to require the use of the data-collection function in the first place. Viewed in this context, the Notice of DataMaster Function Termination plaintiff appealed to superior court and then to the Board is only a notice, as its words state, and is not . a reviewable agency action. See V.R.C.P. 75(a) (authorizing superior court review of agency "action"). The Commissioner's notice to disable the data-collection feature is not an agency action that created "legal consequences" or "determine[d] any right or obligation of any party." *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459-60 (4th Cir.) (finding court lacked jurisdiction to review agency decision to publish certain material because "the content of the campaign was not the consummation of any decisionmaking process that determined rights or obligations or from which legal consequences flowed"), *cert. denied,*

543 U.S. 955, 125 S. Ct. 415 (2004); see also *Hearst Radio, Inc. v. Fed. Communications Comm'n,* 167 F.2d 225, 227 (D.C. Cir. 1948) (noting that the "Administrative Procedure Act does not provide judicial review for everything done by an administrative agency" and dismissing appeal for lack of agency action).

*The Board's decision is vacated, and the appeal is dismissed.*