NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 51

No. 2016-157

| | |
|---|---|
| In re Bourbeau Custom Homes, Inc. | Supreme Court |
| | On Appeal from<br>Employment Security Board |
| | January Term, 2017 |

Maureen Tivnan, Chair

Claudine C. Safar and Anthea Dexter-Cooper of Monaghan Safar Ducham PLLC, Burlington, for Appellant.

Dirk Anderson, Department of Labor, Montpelier, for Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **ROBINSON, J.** This case presents a challenge to the Employment Security Board's classification of several carpenters, including one single-member LLC, an installer of cement siding, and a painter as employees of Bourbeau Custom Homes, Inc. for the purposes of Vermont's unemployment compensation system. First, Bourbeau contends that it is not liable for unemployment taxes on monies paid to a single-member LLC because an LLC is not an "individual" under the unemployment tax statute and therefore not subject to the ABC test established by 21 V.S.A. § 1301(6)(B). Second, it argues that the Board erred in applying the ABC test with respect to all of the workers whose remuneration is the subject of this appeal. We agree with Bourbeau on the first point and hold that an LLC is not an "individual" for the purposes of assessing unemployment taxes. However, we affirm the Board's determination that the

remaining four individuals are employees for purposes of Vermont's unemployment compensation system.[1]

¶ 2.     Based on the administrative law judge's (ALJ) findings of fact, and its own hearing, the Employment Security Board found the following facts.  Bourbeau is based in Swanton, Vermont and is engaged in the custom design and construction of new homes.  At issue in this case is the proper classification of an LLC whose single owner-member helped build the homes sold by Bourbeau, as well as four individuals who were also paid for services in connection with the construction.  On its website, Bourbeau advertises itself as a business that will build a customer's "dream home."  Bourbeau gives potential customers a bid for the proposed project, supplies all the materials for its projects,[2] and offers a "total finished package" to its customers.  It aims to complete customers' homes within twelve to sixteen weeks, and its website allows customers to track the progress of the home throughout the construction process.  It strives for complete customer satisfaction, and guarantees its work for one year after completion.

¶ 3.     Bourbeau employs a foreman who visits its job sites to monitor progress on the homes.  The owner of the company, Mr. Bourbeau, establishes the project schedules, which are largely driven by the customers' demands.  However, the workers at issue in this appeal control

---

[1]  We emphasize the limits of our decision.  We need not decide whether any of these individuals are employees of Bourbeau for other purposes, such as tort law or tax law.  Nor does our decision compel Bourbeau to alter its contractual arrangements with the workers it hires to build the homes; it is free to enter into whatever agreements it chooses.  The only question before this Court is whether Bourbeau is required to pay a tax on wages paid to these workers to support the state unemployment fund.

[2]  Bourbeau disputes that it supplied all materials for the projects that were the subject of the Board's decision and argues that the painters it hired provided their own paint.  However, the painter that the Board determined to be an employee in this case reported that Bourbeau provided the paint. We affirm the Board's factual findings "if they are supported by credible evidence, even if there is substantial evidence to the contrary."  Fleece on Earth v. Dep't of Emp't & Training, 2007 VT 29, ¶ 4, 181 Vt. 458, 923 A.2d 594 (quotation omitted).  We defer to the Board's finding in this regard, as it is supported by the record.  Furthermore, whether Bourbeau in fact supplied the paint does not tip the scales with respect to the outcome of this case.

2

their own hours at the job sites and provide their own hand tools. The workers at issue all signed agreements with Bourbeau that specified that they were independent contractors, although most of these agreements did not contain specific information about reimbursement for services. The contract allowed Bourbeau to terminate the agreement if the subcontractor breached or failed to perform to Bourbeau's satisfaction.

¶ 4.    Beginning in January 2013, the Department of Labor conducted an audit of Bourbeau that eventually covered the third quarter of 2010 through the first quarter of 2013. The auditor first identified sixty-one individual entities that received payments from Bourbeau during that time and determined that fifty-two were properly classified as independent contractors. The auditor determined, however, that nine, including the five at issue in this appeal, should have been classified as employees and therefore Bourbeau was liable for unemployment taxes on their wages. Accordingly, the Department issued an assessment in October 2013 for $7032.96, which included unpaid taxes from 2010 until 2013, a penalty, and interest. Bourbeau appealed the assessment in November.

¶ 5.    An ALJ at the Department held a hearing and issued a written decision on the appeal in May 2015. The ALJ sustained the auditor's determination that six of these nine individuals were employees.[3] Five of these workers are at issue in this appeal[4]: Chris Parent, Shawn Phillips, John Simon, Timothy Putzier, and John Parah. Parent and Phillips did carpentry and siding work, Simon did painting work, and Putzier installed cement siding. Parah contracted with Bourbeau

---

[3] The ALJ concluded that three of the nine alleged employees were not employees under the unemployment statute: two were customers who had received refunds from Bourbeau and one was a licensed surveyor and site engineer who, according to the Department's own parameters, qualified as an independent contractor. The Board questioned the ALJ's reasoning with respect to the surveyor, but affirmed the ALJ's conclusion that he was not an employee on the ground that his services were "incidental" to Bourbeau's business.

[4] Bourbeau has not appealed the Board's determination with respect to an individual who did website and administrative work for the employer.

3

through his single-member LLC, John Parah Construction, LLC, to do carpentry, flooring, and finish work. Simon and Parah are the only two workers in question who completed and returned questionnaires sent by the auditor.

¶ 6. The ALJ applied the ABC test, codified in 21 V.S.A. § 1301(6)(B), which requires the employer to show that: (A) the individual is free from the employer's control or direction; (B) the individual's service is either outside the employer's usual course of business or performed outside the employer's place of business; and (C) the individual is independently established. The ALJ concluded that Bourbeau failed to show that the five workers met part A of the test because it "retains substantial control over the various worksites." The ALJ placed weight on the facts that Bourbeau handles all the scheduling for the projects, a foreman monitors progress at the worksites, the workers' contracts stipulate that Bourbeau has a unilateral right of termination, and the homeowners' contracts with Bourbeau require them go to Bourbeau, not the hired workers, if there are any problems with the construction work.

¶ 7. The ALJ also determined that Bourbeau failed to meet part B of the test for all five workers. The ALJ concluded that Bourbeau did not prove that the subcontractors performed services outside Bourbeau's place of business because their services were all performed at Bourbeau's worksites. In addition, the subcontractors' work was not performed outside the usual course of Bourbeau's business because Bourbeau is in the business of building homes and the subcontractors' work was "integral to the process of building a home."

¶ 8. Lastly, the ALJ concluded that Bourbeau failed to meet part C of the test for all the workers except Parah. Parah was found to be independently established because he operates through a registered LLC. The ALJ found that three of the other workers, Parent, Phillips, and Putzier, had received "wages from covered employers," which indicated that they were not independently established. The ALJ did not analyze whether Simon was independently established in the written decision. Overall, the ALJ decided that Bourbeau failed to meet its burden in

4

meeting this part of the test for Parent, Phillips, Putzier, and Simon. Because Bourbeau did not satisfy all three parts for any of the workers, the ALJ concluded that the five workers were employees.

¶ 9. Bourbeau appealed to the Employment Security Board in June 2015. The Board affirmed the ALJ's determination in April 2016, relying on the same facts and reasoning as the ALJ. Bourbeau appealed to this Court pursuant to 21 V.S.A. § 1332.

¶ 10. We review a decision of the Employment Security Board with great deference, and "decisions within the Board's expertise are presumed to be correct." Great N. Constr., Inc. v. Dep't of Labor, 2016 VT 126, ¶ 12, __ Vt. __, __ A.3d __. However, this Court is "not bound by an erroneous construction of the law." Fleece on Earth, 2007 VT 29, ¶ 26. If a Board's factual findings are challenged, we affirm the findings if supported by credible evidence. Id. ¶ 4.

¶ 11. The Vermont Unemployment Compensation Law requires employers to contribute to the state unemployment fund in the form of taxes on wages paid to employees. 21 V.S.A. § 1321. Under the law, any "individual" who receives wages from an employer for performing services is presumed to be an employee. 21 V.S.A. § 1301(6)(B). The employer may rebut this presumption if it meets all three prongs of the "ABC test." Id. If the employer proves all three factors, the individual is not considered to be an employee and the employer is not liable for unemployment taxes on wages paid to that individual. Great N. Constr, 2016 VT 126, ¶ 2. Because the employer bears the burden of showing that workers satisfy the test, the failure to produce evidence concerning any of the factors will result in the Department classifying the worker as an employee. Id. ¶ 14.

¶ 12. In this case, Bourbeau first argues that it contracted not with John Parah the individual, but with John Parah Construction, LLC. Bourbeau contends that an LLC is not an "individual" under the unemployment statute and thus cannot be classified as an employee.

Second, even if an LLC can be an employee, Bourbeau argues that it has met all three parts of the ABC test for all five of the workers at issue. We address these arguments in turn.

## I. Whether an LLC is an "Individual"

¶ 13. We first conclude that the word "individual" in the unemployment compensation statute was not intended to apply to duly formed limited liability companies and therefore an employer cannot be liable for unemployment taxes on monies paid to an LLC.[5] Under 21 V.S.A. § 1301(6)(B), "[s]ervices performed by an <u>individual</u> for wages shall be deemed to be employment . . . ." (Emphasis added.) The statute does not define "individual." The issue of whether an LLC is an "individual," and therefore subject to the unemployment compensation statute, is a question of statutory interpretation.

¶ 14. Our primary goal when interpreting statutes is to determine and carry out the intent of the Legislature. <u>Tarrant v. Dep't of Taxes</u>, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999). We begin by examining the statutory language, and if the language of the statute is clear, it must be enforced according to its plain meaning. <u>Id</u>. However, if the language is ambiguous, "legislative intent must be determined through consideration of the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law." <u>Id</u>. Although we afford some deference to the Board's interpretation of the Unemployment Compensation Act, we will not affirm an unjust or unreasonable interpretation.[6] See <u>In re Sleigh ex rel. Unnamed Motorists Accused of DWI Infractions</u>, 2005 VT 45, ¶ 10, 178 Vt. 547, 872 A.2d 363. In this case, the text

---

[5] We specifically reserved this question in <u>Great Northern Construction</u>, 2016 VT 126. We noted that whether "individual" includes LLCs was a question that had not been directly addressed by the Court and should be addressed by the Legislature. <u>Great N. Constr</u>, 2016 VT 126, ¶ 13 n.5. Because this case directly raises the question, we have no choice but to address it.

[6] Neither the ALJ nor the Board addressed this question below. The ALJ considered the fact that Bourbeau contracted with Parrah's LLC only as a factor that influenced part C of the test, which asks whether the purported employee was independently established. However, in its briefing, the Department argues that a single-member LLC is an "individual" pursuant to the unemployment compensation laws.

of the unemployment compensation statute more broadly, other Vermont statutes, this Court's precedents, decisions from other states, and the text and purpose of the statute creating the business form of an LLC all support our conclusion that an LLC is not an individual for the purposes of the unemployment statutes. We reject the Department's arguments to the contrary.

¶ 15. First, throughout the Unemployment Compensation Act, the Legislature distinguishes an "individual" from a business entity. Section 1301(4) defines an "[e]mploying unit" to include "any individual <u>or</u> type of organization." (Emphasis added.) This definition explicitly distinguishes individuals from other types of organizations or business entities. Furthermore, the statute refers to both "individuals" and "persons," and the context of each word shows that the Legislature intended "person" to encompass business entities, but "individual" to refer only to human beings. For instance, "American employer" is defined to include a "<u>person</u> who is" either "an <u>individual</u> who is a resident of the United States," a partnership, a trust, or a corporation. 21 V.S.A. § 1301(6)(A)(v)(IV) (emphasis added). This definition reinforces that an "individual" does not include an LLC for several reasons: It shows that "person" and "individual" are intended to encompass different meanings, given that the statute defines an "individual" as one of several kinds of "persons." And it reinforces that the term "person" is intended to include business entities, and that "individual" is distinct from the business entities that were listed. Therefore, the statute specifies that an employer, as a "person," could be either a human being or a business entity, but an employee, as an "individual," can be only a human being.

¶ 16. Moreover, the unemployment compensation statute uses the word "individual" in such a way that its only intended meaning could be that it refers to a human being. For example, the statute regularly uses the phrase "his or her" in relation to an "individual" but not to a business entity, presumably because gendered pronouns apply only to humans and not business entities. See 21 V.S.A. § 1301(1) (" 'Benefits' and 'compensation' means the money payments payable to an <u>individual</u>, as provided in this chapter, with respect to <u>his or her</u> unemployment." (emphasis

7

added)); id. § 1301(9)(D) ("An individual's week of unemployment shall be deemed to commence only after his or her registration at an unemployment office." (emphasis added)). The statute additionally refers to an "individual" who is a "resident" or a "citizen," descriptions that would apply only to a human and not a business entity. See id. § 1301(6)(A)(v) ("The term 'employment' shall include the service of an individual who is a citizen of the United States . . . ." (emphasis added)); id. § 1301(6)(A)(v)(IV)(aa) (defining "American Employer" as "an individual who is a resident of the United States" (emphasis added)). In these ways, the unemployment compensation statute distinguishes between individuals and business entities, indicating that the Legislature intended "individual" to refer only to a human being.

¶ 17. Second, the Legislature has distinguished the term "individual" from "person" and business entities in other statutes as well, showing a consistent intent to exclude business entities from the definition of "individual." See, e.g., 11 V.S.A. § 4001(11) (" 'Entity' means a person other than an individual."); 11A V.S.A. § 1.40(14) (defining "person" to include an "individual and entity").

¶ 18. Third, this Court has previously determined that a corporation is not an "individual." While a corporation is a distinct entity from an LLC, we find this holding to be persuasive on the issue of whether an LLC may be an "individual." In Northern Rent-A-Car, Inc. v. Conway, 143 Vt. 220, 464 A.2d 750 (1983), the single issue on appeal was whether the word "individual" included corporations under 32 V.S.A. § 8911(10), a statute that granted certain qualified "individuals" an exemption for a purchase and use tax on motor vehicle transfers. We concluded that the "well understood and common meaning" of the word "individual" did not include corporations. N. Rent-A-Car, 143 Vt. at 222, 464 A.2d at 751 (citation omitted). In support of this conclusion, we pointed to the dictionary definition of the word and also noted that the Legislature had defined "person" in a different section of the statute to include "any individual, firm, partnership . . . or corporation," which indicated that the Legislature intended to distinguish

8

between a "person," which included corporations, and an "individual," which did not. Id. at 223, 464 A.2d at 752 (quoting 32 V.S.A. § 8902(7)).

¶ 19. Our conclusion that a business entity is not an "individual" comports with other courts' holdings regarding the meaning of the word "individual." See, e.g., Mohamad v. Palestinian Auth., 566 U.S. 449, 454-55 (2012) (holding that federal statute creating cause of action against an "individual" for acts of torture and extrajudicial killings applies only to human beings, based on the "ordinary meaning" of the word and the way Congress distinguishes between individuals and artificial entities); In re Chateaugay Corp., 920 F.2d 183, 184-85 (2d Cir. 1990) (holding that, under federal bankruptcy statute, "individual" means human being, so a corporation is not an individual); Martinez v. State, 750 S.E.2d 504, 509-10 (Ga. Ct. App. 2013) (holding that statute criminalizing fraudulent use of an "individual's" identifying information applied only to human victims and not corporations).

¶ 20. We find further support for our conclusion in the language and intent of the LLC statute. In that statute, the Legislature repeatedly expressed its intent for an LLC to be a distinct business entity. See 11 V.S.A. § 4021 ("A limited liability company is a legal entity distinct from its members."); 11 V.S.A. § 4011(a) ("A limited liability company is an entity distinct from its members"). As defined by the statute, " '[e]ntity' means a person other than an individual." 11 V.S.A. § 4001(11). The statute thus expressly demonstrates the Legislature's intent to treat LLCs as separate business entities and not as "individuals."

¶ 21. The Department's position that single-member LLCs must be treated as individuals unless they employ other employees, in which case they are considered to be employing units, is unsupported by the statute creating the limited liability company form. The LLC statute does not distinguish between single- and multi-member LLCs. Nor does it distinguish between those with employees and those without. It states that "[o]ne or more persons may organize a[n] [LLC], consisting of one or more members," but does not establish that single-member LLCs are to be

9

treated differently. 11 V.S.A. § 4022(a). We find no merit in the Department's argument and conclude that single- and multi-member LLCs are both entities that are distinct from their members and are therefore not "individuals."

¶ 22. Finally, we reject the Department's suggestion that the proper interpretation of Vermont's unemployment compensation laws should be driven by the means through which the LLC pays federal income tax. The Department argues that John Parah Construction, LLC should be considered an individual because the only member, Parah, pays federal taxes as a sole proprietorship. Nothing in the unemployment compensation statute, or the statue creating the LLC structure, suggests that the Legislature intended federal tax law to control how the statute was applied. For the reasons set forth above, under Vermont law, an LLC is a distinct legal entity separate from its members, is not an "individual" under the unemployment compensation statute, and may not be classified as an employee for the purposes of assessing unemployment compensation taxes.

## II. Applying the ABC Test

¶ 23. We conclude that the Board's determination that the remaining four workers are employees is not clearly erroneous. This case is not driven by the kind of detailed and individualized assessment of each worker's activities that we have grown accustomed to in misclassification challenges. Instead, two sets of considerations drive the Department's application of the ABC test to these workers: its general approach to the relationship between home-builders and the workers they hire to build the homes, and its characterization of Bourbeau's business. We conclude that the former, as applied to the facts of this case, is within the Department's discretion, and the latter is not clearly erroneous. These conclusions inform our review of the Board's application of the ABC test and lead us to affirm with respect to the remaining four workers.

10

¶ 24. The Department's position in this case is largely driven by its general presumption that a builder in the business of building and selling homes is the employer of workers hired to help build the home. Its reasoning is that carpenters and other workers who participate in the construction are central to the core services of such businesses: to build houses. Pointing to the right-to-control prong of the ABC test, the Department assumes that a builder necessarily exercises a degree of control over such workers that would defeat a finding of sufficient independence. And such work is so central in the ordinary course of homebuilding that a builder could not satisfy the nature-of-the-business requirement of the ABC test with respect to a hired carpenter or similar worker. The Department distinguishes plumbers, electricians, and other practitioners of licensed trades by explaining that these professionals, by virtue of their professional licenses, have independent responsibilities with respect to their work so that the assumptions that support the general approach to carpenters do not apply.

¶ 25. We conclude that on the record of this case, there is no evidence that contradicts the Department's general assumptions, at least as to the nature-of-the-business prong of the ABC test. We acknowledge that the Department's approach is broad and it relies on generalizations about the nature of construction work that may not always be correct. However, it may also provide clarity and predictability to the application of an otherwise broad test that may lead to unpredictable outcomes. We need not review the Department's approach as it would apply to other facts beyond the specifics of this case.[7] We conclude that generally, the work of carpenters, concrete-siding installers, and painters is necessary and central to the business of building homes.

---

[7] For example, we note that the Department's approach fails to recognize that some workers with specialized skills outside the ordinary ambit of a general builder may also qualify as true independent contractors, even in the absence of a professional license. See Great N. Constr, 2016 VT 126, ¶ 24 (concluding that carpenter with specialized skill in restoration of fragile buildings and structures could be true independent contractor). In this case, there is no evidence that any of the four carpenters at issue have specialized skills of that sort.

¶ 26. The Department's understanding of Bourbeau's business model is likewise central in this case. The Department treated Bourbeau as if it were in the business of building and selling homes. Bourbeau challenges the Board's factual findings in this regard and claims that the Department mischaracterized the nature of its business. It argues that Bourbeau provides a management service and is not a general contractor. It emphasizes that Bourbeau is not in the business of selling homes, and that it does not do any of the building itself; instead, it custom designs homes, connects customers with subcontractors, and manages the construction of the homes.

¶ 27. We rejected an argument similar to Bourbeau's in Vermont Institute of Community Involvement, Inc. v. Department of Employment Security, 140 Vt. 94, 436 A.2d 765 (1981). The employer in that case, a college, argued that its adjunct faculty members were not employees because it was an "educational broker" and therefore was not "in the business of providing courses, but rather of arranging courses to be provided." Id. at 99, 436 A.2d at 767. We declined to classify the college's services as merely managerial:

> The [College's] articles of association, however, make clear that the College was created to employ teachers, administer educational programs, and confer degrees. The College actively participates in performing those tasks and in supervising its employees who are hired to fulfill the College's stated goals.

Id. In other words, we did not adopt the college's narrow approach to framing the nature of its business; the record showed that its end goal was to provide an education, and its faculty was hired to further that goal.

¶ 28. Based on the record of this case, we likewise conclude that there is "credible evidence" to support the Board's conclusion that Bourbeau is not only in the business of designing homes and organizing the construction process, but is also in the business of building and selling the homes that it designs. Fleece on Earth, 2007 VT 29, ¶ 26. In this case, the record reflects that Bourbeau's end goal is to provide customers with a completed home. Bourbeau interfaces with

the clients, schedules the work of the people it hires, oversees the construction process, and retains substantial control over the worksites. There is thus sufficient evidence to support the Department's factual determination that Bourbeau is in the business of building and selling houses.

¶ 29. Given the above, the Board did not err in concluding that Bourbeau had failed to establish that the four challenged individuals meet all three prongs of the ABC test. 21 V.S.A. § 1301(6)(B) creates the presumption that "[s]ervices performed by an individual for wages shall be deemed to be employment" unless the employer proves that: (A) the individual "has been and will continue to be free from control or direction over the performance of such services"; (B) the service is either outside the usual course of the employer's business or is performed outside the geographic area where the employer operates; and (C) that the individual is "customarily engaged in an independently established trade, occupation, profession or business." To satisfy the test for a worker, an employer must show that the worker meets all three parts; if the employer fails to do so for any of the parts, the workers is deemed to be an employee.

¶ 30. We agree with the Board that Bourbeau cannot show that any of the four workers meet the second prong of the ABC test—that the service provided is "outside the usual course of [Bourbeau's] business." When analyzing this part, we look at "the services performed within the usual course of [the employer's] business, not within the usual course of the 'business' of the person performing services. . . ." Great N. Const., 2016 VT 126, ¶ 20 (quotation omitted). When a worker's service is the "key component" of the employer's business, the employer fails this part of the test. Fleece on Earth, 2007 VT 29, ¶ 22. For example, we held that the employer in Fleece on Earth failed this part of the test because the services that its workers provided, namely knitting and sewing children's clothing, were integral to the employer's business of designing and selling children's clothes. Id. ¶ 22. Alternatively, we held that the employer in Great Northern Construction satisfied this part of the test because the "highly specialized restoration work" that the worker provided was "not necessary to the business of general construction and contracting."

13

2016 VT 126, ¶ 24. As noted above, on the record in this case the Department's view that services such as carpentry, siding, and painting, are a "key component" of Bourbeau's business of building and selling homes is supported by the record. Fleece on Earth, 2007 VT 29, ¶ 22. Consequently, Bourbeau fails part B of the test for the four workers. Because we conclude that Bourbeau cannot establish that the services performed by the four workers at issue were "outside the usual course" of Bourbeau's business, we need not consider the other prongs.[8]

Affirmed in part, reversed in part.

FOR THE COURT:

_____
Associate Justice

---

[8] Bourbeau also challenges the manner in which the auditor conducted the initial audit in this case. Based on Bourbeau's financial records, the auditor identified a list of sixty-one individuals and entities to whom Bourbeau had made payments. He then eliminated those who appeared to be bona fide subcontractors based on state records showing that they had employees or subcontractors of their own. He then assessed Bourbeau for taxes and penalties on the remaining nine individuals and entities—including two of Bourbeau's customers who had never done work for Bourbeau and could not under any framework be considered as employees. Bourbeau essentially argues that the auditor's "slipshod" methods compromises the Board's ultimate conclusion. We agree that the auditor's assessment against Bourbeau for two customers who never did any work for the company suggests that the auditor did not conduct the nuanced and individualized analysis of each purported employee required by the "ABC" test. Wholly apart from any neglect this may reflect, the situation may illustrate the challenges for employers and the Department alike that are inherent in a test that requires such detailed individualized determinations. In any event, the Board's decision under review was based on the record from the initial hearing before the ALJ as well as its own hearing. Its determinations do not rest on the auditor's initial findings but instead on the record developed in the administrative proceeding. Review of the sufficiency of the auditor's analysis is beyond the scope of this appeal.