GOTTLIEB v. ARROW DOOR COMPANY.

1. CORPORATIONS—MINIMUM NUMBER OF STOCKHOLDERS.

There is no present requirement in the State law that for valid corporate existence there must be a specified, or a minimum, number of stockholders.

2. SAME—FRAUD.

A corporate entity will not be disregarded in the absence of proof of fraud, sham, or other improper use of the corporate form.

3. SAME—DOMINATION OF SINGLE STOCKHOLDER.

A corporation that is under the domination of a principal stockholder who may be entitled to all of its profits violates no re-

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 13 Am Jur, Corporations §§ 6, 175.
[2] 13 Am Jur, Corporations §§ 7, 8.
[4] 13 Am Jur, Corporations § 810.
[5] 58 Am Jur, Workmen's Compensation § 2.
[6] 58 Am Jur, Workmen's Compensation § 150.
Workmen's compensation: interest in the business or in corporation or firm owning business as affecting right to compensation. 15 ALR 1288, 81 ALR 644.

quirement of this State's statutes, is not opposed to public policy, and constitutes no fraud on creditors.

4. SAME—DOMINATION OF SINGLE STOCKHOLDER—CONTRACT OF EMPLOYMENT.

A corporation that is under the domination of a single stockholder may properly enter into a contractual relationship of employment with him.

5. WORKMEN'S COMPENSATION—INTENT OF ACT.

The workmen's compensation act was intended to cast the burden of industrial injuries, not exclusively upon the victim and his family, but in part upon those who profit by the industry (PA 1912 [1st Ex Sess], No 10, as amended).

6. SAME—INJURED EMPLOYEE ALSO SOLE STOCKHOLDER OF CORPORATE EMPLOYER.

Claimant for workmen's compensation who admittedly sustained injuries arising out of and in the course of employment by defendant corporation, is not to be denied compensation by reason of the fact that he was the sole stockholder, president, and treasurer of such corporation, where the corporation had paid premiums for workmen's compensation insurance based on his salary as an employee (CLS 1956, § 411.7).

Appeal from Workmen's Compensation Appeal Board. Submitted June 6, 1961. (Docket No. 5, Calendar No. 48,970.) Decided September 23, 1961.

Louis Gottlieb presented his claim against Arrow Door Company, a Michigan corporation, employer, of which he was sole stockholder, and Metropolitan Insurance Company, insurer, for workmen's compensation because of industrial accident. Award to plaintiff. Defendants appeal. Affirmed.

*Charfoos & Charfoos* (*Samuel Charfoos,* of counsel), for plaintiff.

*Markle & Markle,* for defendants.

TALBOT SMITH, J. Louis Gottlieb, the plaintiff and appellee, claims workmen's compensation on account

of an injury.[1] There is no dispute as to the injury itself (amputations) or the causal connection. He was feeding wood into a wood-shaping machine when he was injured.[2] Rather, objection is made upon conceptual grounds, namely, that he cannot be his own employee, both master and servant.

The argument made arises from the circumstance that the claimant was the sole incorporator and the sole stockholder of Arrow Door Company, a Michigan corporation, and its president and treasurer. He was, defendants argue, in "complete control" of the corporation (which, we are told, was the claimant himself), and he may not be his own employee.

. The argument made would require us to deny the corporate entity, and solely because of its size. There is, however, no requirement in Michigan law today that for valid corporate existence there must be a specified, or a minimum, number of stockholders. Nor do we find allegations or proofs of fraud, sham, or other improper use of the corporate form justifying our "piercing the veil" of corporate existence.[3] The one-man corporation, so-called, is no stranger to the law. That a corporation is under the domination of a principal stockholder who may be entitled to all of its profits violates no requirement of our statute law, is not opposed to public policy, and constitutes no fraud on creditors. *Bourne* v. *Muskegon Circuit Judge,* 327 Mich 175. It is our conclusion that the corporate entity was valid and that it might properly enter into a contractual relationship with the claimant.

In the early days of compensation law much difficulty was experienced with the corporate employee-

---

[1] See PA 1912 (1st Ex Sess), No 10, as amended (CL 1948, § 411.1 *et seq.,* as amended [Stat Ann 1950 Rev and Stat Ann 1959 Cum Supp § 17.141 *et seq.*]).—REPORTER.

[2] September 13, 1958.

[3] See repudiation of a similar argument in *Gledhill* v. *Fisher & Co.,* 272 Mich 353 (102 ALR 1042).

executive cases, particularly those where (as here)
the corporation was small and largely under the con-
trol of its principal stockholder.[4]   In a series of
decisions, compensation was denied upon the theory,
in effect, that the compensation act was intended to
protect workmen and their dependents, not corpora-
tion executives.[5]   The principal difficulty with the
easy distinction was its lack of harmony with the
objectives of the act.   The compensation laws arose
from the conviction of our people that the burden
of industrial injuries should be borne not exclusively
by the victim and his family, but in part "by those
who profit by the industry."   See the messages of
President Theodore Roosevelt to the Congress, re-
ported in 41 Cong Rec 22, 26; 42 Cong Rec 68, 72,
1347.   Since all who work in the industry are neces-
sary to the supply of the article, the injuries of all,
in the words of Judge Learned Hand, "are part of
the cost of producing that supply, and compensation
for them is within the scheme,"[6] unless, of course,
otherwise excluded by the terms of the act.   Yet, in
these cases, many were denied compensation, for
injuries otherwise compensable, merely because of
their asserted corporate status, oftentimes amount-
ing to no more than their enjoyment of the title of
"executive."   The verbiage thus prevailed over the
substance.   But this atrophy of common sense was
relatively short lived.   The doctrine of "dual capac-
ity" was developed by the courts, according to which
the corporation "executive" was not to be denied
compensation if, at the time of the injury he was
acting in another capacity, that is, not acting as
an executive (however an executive may act) but

[4] For the abandonment of the control test of employment in Michi-
gan law, see *Tata* v. *Muskovitz,* 354 Mich 695.

[5] *E.g., Bowne* v. *S. W. Bowne Co.* (1917), 221 NY 28 (116 NE
364).

[6] *Grain Handling Co.* v. *Sweeney* (CCA 2), 102 F2d 464, 466.

was running a lathe, or supervising production.[7] The distinction, however laudable as a step towards reality, is artificial.[8]  In the smaller corporations the line between manager and workman is blurred, and in the one-man corporation of the most limited type impossible to draw.  Yet in these enterprises, we find the very persons who are in need of the protection of the act, since the hazards of production are shared personally by them, just as they are by those on the assembly lines of the large corporations.

Faced with the difficulties above suggested, the legislatures of this and other States have undertaken clarification.[9]  In this State the term "employee" is defined, generally, as "every person in the service of another, under any contract of hire, express or implied."[10]  That the claimant was in the service of "another" (the corporation) upon these facts cannot be denied.  The act then continues, by way of specific inclusions with respect to certain occupations theretofore controversial, in the following terms:

"including aliens,
"including wives    *    *    *, working members of partnerships,    *    *    *
"including [and this is the clause governing the case before us] any person insured for whom and to the extent premiums are paid based on wages, earnings or profits."

The claimant comes squarely within the language last above quoted.  As the appeal board properly held:

"The defendant company carried workmen's compensation insurance with the defendant insurer and

---

7 See 99 CJS, Workmen's Compensation § 82.

8 *Mine Service Co.* v. *Green* (Ky), 265 SW2d 944.

9 *E.g.*, NC Gen Stat 1958 Replacement and 1959 Supp § 97–2, subd (2).

10 CLS 1956, § 411.7, subd (2) (Stat Ann 1960 Rev § 17.147, subd [2]).

paid premiums to the insurer on the salary of the plaintiff to the extent of $5,600. Section 7 of part I of the act defining the term, 'employee' provides in part as follows:

" 'including any person insured for whom and to the extent premiums are paid based on wages, earnings or profits,'

"The above-quoted language ['including any person insured', et cetera] was put into the statute in a 1949 amendment. Its purpose was to prevent just such shenanigans as we have in this case. Prior to 1949 it was quite common for an insurance carrier to sell a policy, collect premiums upon the earnings of a particular individual, and then deny compensation when that individual was injured upon the claim that he was not an employee. This policy of 'heads I win, tails you lose' could have been expected to produce remedial legislation, and did."

The cases of *Kramer* v. *Charlevoix Beach Hotel,* 342 Mich 715 (8 NCCA3d 133), and *Scott* v. *Alsar Company,* 336 Mich 532, the one involving a partner, the other an independent contractor, do not control the case before us.[11]

Affirmed. Costs to appellee.

CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred with TALBOT SMITH, J.

DETHMERS, C. J., concurred in result.

---

[11] See the discussion of the *Kramer Case* in John C. H. Wu, Cases and Materials on Jurisprudence, p 545.