******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# PETER GOULD *v.* CITY OF STAMFORD ET AL.
## (SC 20004)

Palmer, Mullins, Kahn, Vertefeuille and Ecker, Js.*

*Syllabus*

The plaintiff appealed from the decision of the Compensation Review Board, claiming that the board improperly upheld the decision of the Workers' Compensation Commissioner denying and dismissing his claim for benefits under a provision (§ 31-310) of the Workers' Compensation Act (§ 31-275 et seq.) that allows for additional benefits in certain circumstances when an injured employee worked for more than one employer as of the date of the compensable injury. The plaintiff sustained an injury in the course of his part-time employment with the defendant city. At the time of his injury, the plaintiff was also the sole member of a limited liability company, I Co., which provided video production services for corporations. I Co. occasionally hired independent contractors, but the plaintiff otherwise was solely responsible for completing I Co.'s projects. I Co. had purchased a workers' compensation insurance policy that covered the period in which he had been injured while working for the city. After his injury, the plaintiff filed a claim for workers' compensation based on both his earnings from the city and from I Co. Although the city accepted the compensability of the injury, the defendant Second Injury Fund denied the plaintiff's claim for concurrent employment benefits on the grounds that there was no employer-employee relationship between the plaintiff and I Co., and that members of single-member limited liability companies are presumptively excluded from the act pursuant to a 2003 memorandum issued by the chairman of the Workers' Compensation Commission that provided, inter alia, that members of single-member limited liability companies are presumed to be excluded from the act unless they elect to be covered by filing Form 75, which serves to notify the commission that the limited liability company is electing to accept the provisions of the act. In reviewing the Second Injury Fund's denial of the plaintiff's claim, the Workers' Compensation Commissioner concluded that the plaintiff was not entitled to concurrent benefits, reasoning that the plaintiff was not an employee of I Co. because, among other things, he controlled the means and methods of the services that he performed on behalf of I Co., lacked a fixed salary, reported to no one, and treated I Co. as a sole proprietorship for tax purposes. The commissioner also observed that I Co. had not elected to accept the provisions of the act by filing Form 75 in accordance with the dictates of the 2003 memorandum. The plaintiff thereafter appealed to the board, which affirmed the commissioner's decision. The board concluded that, regardless of whether I Co. elected to accept the provisions of the act by filing Form 75, and regardless of whether the commission chairman correctly determined in the 2003 memorandum that such an election is required for single-member limited liability companies, the plaintiff could not prevail because the commissioner properly found that the plaintiff was not an employee of I Co. The board reasoned that, because the plaintiff was not paid on the basis of the number of hours he worked but, rather, compensated himself for his activities solely as a business owner obtaining profits from his business, he commingled his personal activities with I Co.'s activities, and, thus, I Co. did not maintain the appropriate corporate formalities to establish an employer-employee relationship with its principal. The board also observed that the plaintiff did not receive a tax form for reporting wages from I Co. but reported his income from I Co. as a self-employed individual, which, according to the board, supported the determination that he was self-employed. On appeal from the board's decision, the plaintiff claimed, inter alia, that he was an employee of I Co. for purposes of the act and, therefore, was eligible for concurrent employment benefits. *Held*:

1. This court rejected the rationale that the board relied on in affirming the commissioner's decision, namely, that, because I Co. distributed its profits to the plaintiff instead of paying him an hourly rate, it did not maintain the appropriate corporate formalities, and, thus, I Co.'s status

as a limited liability company had to be disregarded: the Second Injury Fund never claimed that I Co.'s corporate status as a limited liability company must be disregarded, and the board cited no persuasive authority for the proposition that it is improper for a single-member limited liability company to distribute profits to the member rather than paying him or her an hourly wage or that it was improper for the member to report earnings from the company as self-employment earnings rather than wages, and the governing law appeared to be to the contrary; accordingly, I Co. was treated as a properly constituted limited liability company for purposes of the present case.

2. There was no requirement under the act that a single-member limited liability company must elect to accept the act's provisions before its member can be covered thereunder, and, therefore, the commission chairman did not have the authority to adopt, in the 2003 memorandum, a conclusive presumption that members of single-member limited liability companies are not their employees; nothing in § 31-275 (10), which defines "employer" for purposes of the act to include a limited liability company, and which also provides that a person who is a sole proprietor of a business may accept the provisions of the act by notifying the commissioner of his intent to do so and thereby become an employer for purposes of the act, requires single-member limited liability companies to elect to accept the provisions of the act before their members are covered thereunder, and the legislature's choice not to include single-member limited liability companies in the election provision of § 31-275 (10) indicated that it intended that single-member limited liability companies may be employers of their members.

3. The board incorrectly concluded that the plaintiff was not an employee of I Co. and, therefore, was not entitled to concurrent employment benefits pursuant to § 31-310; this court clarified that the proper test for determining whether the member of a single-member limited liability company is an employee of the company is whether the member performed services for the company and was subject to the hazards of the company's business, and, because there was no dispute in the present case that the plaintiff provided services to I Co. and was subject to the hazards of I Co.'s business, he was I Co.'s employee for purposes of the act.

Argued April 5, 2018—officially released April 2, 2019

*Procedural History*

Appeal from the decision of the Workers' Compensation Commissioner for the Seventh District denying and dismissing the plaintiff's claim for certain additional workers' compensation benefits, brought to the Compensation Review Board, which affirmed the commissioner's decision, and the plaintiff appealed. *Reversed*; *judgment directed*.

*John J. Morgan*, for the appellant (plaintiff).

*Kenneth H. Kennedy, Jr.*, assistant attorney general, with whom, on the brief, were *George Jepsen*, former attorney general, and *Philip M. Schulz*, assistant attorney general, for the appellee (defendant Second Injury Fund).

*Opinion*

PALMER, J. The issue that we must resolve in this appeal is whether the plaintiff, Peter Gould, the sole member of a single-member limited liability company, Intervale Group, LLC (Intervale), qualifies as Intervale's employee for purposes of the Workers' Compensation Act (act), General Statutes § 31-275 et seq., and is therefore eligible for concurrent compensation benefits from the defendant Second Injury Fund (fund) pursuant to General Statutes § 31-310.[1] The plaintiff was a part-time employee of the named defendant, the city of Stamford (city),[2] and, according to him, was concurrently employed by Intervale. After the plaintiff was injured while working for the city, he filed a claim, pursuant to the act, seeking compensation based on the earnings that he received from both the city and Intervale. The city accepted the compensability of the injury and paid its indemnity obligations to the plaintiff but, pursuant to § 31-310, transferred the concurrent compensation obligation to the fund. The fund denied the claim for benefits on the ground that the plaintiff was not Intervale's employee. The plaintiff sought review of this ruling by the Workers' Compensation Commission (commission). After a hearing, the Workers' Compensation Commissioner for the Seventh District (commissioner) determined that the plaintiff was not an employee of Intervale for purposes of the act and, therefore, did not qualify for compensation benefits based on his allegedly concurrent employment. The plaintiff appealed from the decision of the commissioner to the Compensation Review Board (board), which affirmed that decision. This appeal followed.[3] We conclude that the plaintiff qualifies as Intervale's employee for purposes of the act and, therefore, is eligible for concurrent employment benefits pursuant to § 31-310. Accordingly, we reverse the decision of the board.

The record reveals the following procedural history and facts that were found by the commissioner or that are undisputed. In 2000, the plaintiff formed Intervale, a limited liability company of which he is the sole member. Intervale provided various video production services to corporations. Intervale occasionally hired independent contractors, but the plaintiff was otherwise solely responsible for completing the company's projects, which included field production work. He reported to no one other than Intervale's clients.

Intervale did not pay the plaintiff a fixed salary. Rather, when Intervale received a payment from a customer, the plaintiff would deposit the payment in Intervale's bank account and then withdraw funds as needed. In 2012 and 2013, the plaintiff reported his income from Intervale for federal tax purposes on schedule C of Internal Revenue Service Form 1040, which is the form used to report "Profit or Loss From Business (Sole Proprietorship)."

In 2012, a shopping mall in Massachusetts hired Intervale to shoot a video at the mall. As a condition of the engagement, the mall required Intervale to obtain workers' compensation insurance. The premium for the policy that Intervale purchased was based on an estimated annual employee remuneration of $12,750, which was the figure that the insurance company recommended for small businesses with an undetermined payroll. The plaintiff's gross earnings from Intervale were $43,600 in 2012 and $97,496 in 2013. Thereafter, Intervale purchased a workers' compensation insurance policy for the period from April 4, 2013, to April 4, 2014.

In 2013, in addition to his work in connection with Intervale, the plaintiff worked part-time for the city as a park police officer. On July 28, 2013, the plaintiff injured his back and legs during the course of his employment with the city. Thereafter, he filed a claim for compensation under the act based on both his earnings from the city and his earnings from Intervale. The city paid its indemnity obligation to the plaintiff and transferred the claim for compensation to the fund pursuant to § 31-310 based on the plaintiff's allegedly concurrent employment with Intervale. The fund denied the plaintiff's claim for concurrent employment benefits on the grounds that (1) there was no employer-employee relationship between the plaintiff and Intervale, and (2) members of single-member limited liability companies are presumptively excluded from the act pursuant to a memorandum issued by the chairman of the commission in 2003. See John A. Mastropietro, Chairman, Workers' Compensation Commission, State of Connecticut, Memorandum No. 2003-02, "WCC Limited Liability Companies & Revised Forms Memorandum—April 17, 2003" (2003 memorandum), available at https://wcc.state.ct.us/memos/2003/2003-02.htm (last visited March 26, 2019). The 2003 memorandum provides in relevant part: "After carefully considering this matter, we have determined that members of [limited liability companies (LLCs)] that contain only one member (single-member LLCs) should be presumed to be *excluded* from the [a]ct unless they have elected to be covered, [whereas] members of multiple-member LLCs should be presumed to be *covered* under the [a]ct unless they have elected to be excluded. In order to clarify this policy, we have amended our Form 6B and . . . Form 75[4] accordingly, and direct all members of LLCs to use such forms in the future." (Emphasis in original.) The 2003 memorandum thus analogized single-member limited liability companies to sole proprietors, who are excluded from the provisions of the act pursuant to General Statutes § 31-275 (10)[5] unless they elect to accept its provisions, and analogized members of multiple-member limited liability companies to the partners of a partnership, who, under the same statute, are deemed to have accepted the provisions of the act with respect to themselves unless they elect to be excluded.

The plaintiff thereafter sought the commission's review of the fund's denial of his claim for concurrent employment benefits. In his proposed finding and award, the plaintiff contended that there was "no serious dispute that [he was] an employee of [Intervale]" and that the rule promulgated by the 2003 memorandum, namely, that the member of a single-member limited liability company is presumed not to be an employee of the company, is inconsistent with the definition of "employer" set forth in § 31-275 (10), which includes limited liability companies. In its proposed finding and dismissal, the fund contended that, because the plaintiff was the sole member of Intervale, he was a sole proprietor. Accordingly, the fund argued, under both the provision of § 31-275 (10) requiring sole proprietorships to elect to accept the provisions of the act and the 2003 memorandum, the plaintiff was required to elect coverage by filing a Form 75 before he would be entitled to compensation based on his work for Intervale. The fund also summarily stated that "[t]here is no employer-employee relationship between the [plaintiff] and [Intervale]."

After conducting an evidentiary hearing, the commissioner concluded that the plaintiff was not an employee of Intervale because he controlled "the means and method[s] of the services [that] he performed on behalf of [Intervale]," he lacked a fixed salary, he reported to no one, he treated Intervale as a sole proprietorship for tax purposes, and it was "questionable . . . whether the [plaintiff] intended to cover himself as an employee when [Intervale] procured [workers' compensation coverage] . . . ." The commissioner also observed that Intervale had not elected to accept the provisions of the act pursuant to § 31-275 (10) by filing a Form 75 with the commission, as required by the 2003 memorandum. The commissioner concluded, however, that, irrespective of whether Intervale had filed Form 75, he was not Intervale's employee and, therefore, was not entitled to concurrent employment benefits pursuant to § 31-310.

The plaintiff then appealed from the commissioner's decision to the board. In his brief to the board, the plaintiff asserted that, because the definition of "employer" set forth in § 31-275 (10) expressly includes limited liability companies, the commission chairman had no authority to require single-member limited liability companies to elect to accept the provisions of the act pursuant to § 31-275 (10) before the single member would be covered, as the chairman had done in the 2003 memorandum. The fund maintained in its brief to the board that the commissioner had correctly determined that, because the plaintiff controlled the means and methods of the services that he performed for Intervale, had no fixed salary but, rather, withdrew money from Intervale's bank account as needed, and reported his earnings from Intervale as earnings from self-

employment, the plaintiff was not Intervale's employee. The fund also claimed that the commissioner correctly had determined that, because the plaintiff's gross earnings from Intervale were far in excess of the $12,750 reflected in the workers' compensation insurance policy that the plaintiff had purchased, it was doubtful that he intended to be covered by the policy. Finally, the fund argued that, contrary to the plaintiff's contention, the 2003 memorandum did not require single-member limited liability companies to elect to accept the provisions of the act before their members would be covered but, instead, merely created a rebuttable presumption that such members are not covered.

The board concluded that, regardless of whether Intervale elected to accept the provisions of the act by filing Form 75, as provided by the 2003 memorandum, and regardless of whether the commission chairman correctly determined that such an election is required, the plaintiff could not prevail because the commissioner had found as a factual matter that he was not Intervale's employee, and this factual finding was supported by the evidence. Specifically, the board concluded that, because the plaintiff was not paid on the basis of the number of hours he worked for Intervale but "compensated himself for his activities . . . solely as a business owner obtaining profits from the firm," the plaintiff had commingled his personal activities with the company's activities. Thus, the board concluded, "Intervale was the alter ego of the [plaintiff] and did not maintain the appropriate corporate formalities to establish an employer-employee relationship with its principal." In addition, the board explained that the fact that the plaintiff did not receive a W-2 federal income tax form from Intervale, which is the Internal Revenue Service form for reporting wages but, instead, reported his income from Intervale as a self-employed individual, supported the determination that he was self-employed. On the basis of these considerations, the board affirmed the commissioner's decision.

The plaintiff then filed this appeal. The plaintiff claims that, because the underlying facts are undisputed, the board should have applied plenary review to the commissioner's decision that he was not Intervale's employee instead of deferring to the commissioner's factual finding on that issue. The plaintiff also contends that, under the plain language of § 31-275 (9) (A) (i),[6] which defines "employee" for purposes of the act, he was Intervale's employee and, therefore, was eligible for concurrent employment benefits pursuant to § 31-310. Accordingly, the plaintiff contends, the commission chairman had no authority to alter the statutory provisions of the act by promulgating the rule set forth in the 2003 memorandum, which was premised on the assumption that the members of single-member limited liability companies are not employees of those companies.

The fund responds that, under the act, there is no meaningful distinction between a sole proprietor and a member of a single-member limited liability company, and, therefore, the presumption created by the 2003 memorandum that such members are not employees—which presumption the fund contends is rebuttable—is consistent with the provision of § 31-275 (10) requiring sole proprietors to elect to accept the provisions of the act before they are covered. The fund further maintains that the commissioner's finding that the plaintiff was not Intervale's employee pursuant to the traditional "right to control" test is supported by the record. See, e.g., *Doe* v. *Yale University*, 252 Conn. 641, 680–81, 748 A.2d 834 (2000) ("[t]he right to control test determines the [relationship between a worker and a putative employer] by asking whether the putative employer has the right to control the means and methods used by the worker in the performance of his or her job" [internal quotation marks omitted]).

Before addressing the merits of these claims, we pause to clarify what is and what is not at issue in this appeal. As we indicated, in its brief to the board, the fund argued that, for a variety of reasons, the *plaintiff* was not an *employee* of Intervale. The fund did *not* make the very different claim that *Intervale* has effectively been converted into a *sole proprietorship* because the plaintiff failed to observe the rules governing limited liability companies.[7] Nevertheless, the board's affirmance of the commissioner's decision was based on its determination that, because Intervale distributed its profits to the plaintiff instead of paying him an hourly rate, it "did not maintain the appropriate corporate formalities." Accordingly, the board concluded, Intervale was the plaintiff's "alter ego," and, therefore, its status as a limited liability company must be disregarded. The board cited no persuasive authority, however, for the proposition that it is somehow improper for a single-member limited liability company to distribute profits to the member rather than paying the member wages or, relatedly, that it is improper for the member to report earnings from the company as self-employment earnings rather than wages.[8] Indeed, the governing law appears to be to the contrary. See, e.g., General Statutes (Rev. to 2013) § 34-152 ("[t]he profits and losses of a limited liability company shall be allocated among the members, and among classes of members, in the manner agreed to in the operating agreement"); General Statutes (Rev. to 2013) § 34-158 ("distributions of cash or other assets of a limited liability company shall be allocated among the members . . . in the manner provided in the operating agreement"); see also *Riether* v. *United States*, 919 F. Supp. 2d 1140, 1159 (D.N.M. 2012) (when business entity with single owner does not elect corporate style taxation pursuant to 26 C.F.R. § 301.7701-3 [a], earnings of owner are subject to taxation as self-employment earnings);

26 C.F.R. § 301.7701-3 (a) (2013) (business entity that is not classified as corporation and that has single owner can elect either to be classified as association or to be disregarded as entity separate from its owner for federal tax purposes); General Statutes (Rev. to 2013) § 34-113 (for purposes of state tax law, limited liability company is treated in accordance with classification for federal tax purposes). Because the fund has never made any claim that Intervale's corporate status as a limited liability company must be disregarded due to the method by which the plaintiff was paid, and because the board's conclusion to that effect is not supported by any authority, we cannot accept the board's rationale for affirming the decision of the commissioner. For present purposes, therefore, we treat Intervale as a properly constituted limited liability company that operated as such.

Thus, the first issue that we must address is whether a single-member limited liability company must elect to accept the provisions of the act before the member is covered, as the commission chairman determined in the 2003 memorandum, or, instead, the member may be covered automatically as an employee of the company.[9] Second, if we agree with the plaintiff that the member of a single-member limited liability company may be the company's employee, we also must determine whether the plaintiff was an employee of Intervale for purposes of the act. We conclude that a single-member limited liability company is not required to elect to accept the provisions of the act in order for its member to be covered; rather, the member may be covered automatically as an employee. We further conclude that an employer-employee relationship existed between Intervale and the plaintiff because the plaintiff provided services to Intervale and was subject to the hazards of Intervale's business.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not

previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Citation omitted; internal quotation marks omitted.) *Sullins* v. *United Parcel Service, Inc.*, 315 Conn. 543, 550, 108 A.3d 1110 (2015). "In addition to being time-tested, an agency's interpretation must also be reasonable." *Stec* v. *Raymark Industries, Inc.*, 299 Conn. 346, 356, 10 A.3d 1 (2010).

"Furthermore, [i]t is well established that, in resolving issues of statutory construction under the act, we are mindful that the act indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . Accordingly, [i]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Internal quotation marks omitted.) *Sullins* v. *United Parcel Service, Inc.*, supra, 315 Conn. 550–51.

I

We first consider the plaintiff's contention that there is no requirement under the act that a single-member limited liability company elect to accept the provisions of the act before its member can be covered. We begin our analysis of this claim with the language of the applicable statutory provisions. Section 31-275 (9) (A) defines "employee" in relevant part as any person who "(i) [h]as entered into or works under any contract of service or apprenticeship with an employer, whether the contract contemplated the performance of duties within or without the state," or "(ii) [i]s a sole proprietor or business partner who accepts the provisions of [the act] in accordance with subdivision (10) of this section . . . ." Section 31-275 (10) defines an "employer" as "any person, corporation, limited liability company, firm, partnership, voluntary association, joint stock association, the state and any public corporation within the state using the services of one or more employees for pay, or the legal representative of any such employer . . . ." Section 31-275 (10) also provides in relevant part that "[a] person who is the sole proprietor of a business may accept the provisions of [the act] by notifying the commissioner, in writing, of his intent to do so. If such person accepts the provisions of [the act] he shall be considered to be an employer and shall insure his full liability in accordance with subdivision (2) of subsection (b) of section 31-284. Such person may withdraw his acceptance by giving notice of his withdrawal, in writing, to the commissioner. Any person who is a partner in a business shall be deemed to have

accepted the provisions of [the act] and shall insure his full liability in accordance with subdivision (2) of subsection (b) of section 31-284, unless the partnership elects to be excluded from the provisions of [the act] by notice, in writing and by signed agreement of each partner, to the commissioner."

The plaintiff contends that, because the first sentence of § 31-275 (10) includes limited liability companies in the definition of "employer," and because the election provision of subdivision (10) applies exclusively to sole proprietors, the legislature clearly did not intend that the election provision would apply to single-member limited liability companies. Consequently, he contends, the commission chairman lacked the authority to promulgate the rule set forth in the 2003 memorandum requiring single-member limited liability companies to elect coverage for their members. The plaintiff further maintains that, because there is no presumption that single-member limited liability companies are not the employers of their members, to qualify as Intervale's employee for purposes of the act, he was required to satisfy only the statutory definition of "employee" set forth in § 31-275 (9) (A) (i).

The fund does not seriously dispute the plaintiff's claim that the election provision of § 31-275 (10) does not, by its terms, apply to single-member limited liability companies. Nor does the fund claim that, if we agree with it that single-member limited liability companies are not employers of their members, the commission chairman had the authority to promulgate the rule set forth in the 2003 memorandum requiring single-member limited liability companies to elect to accept the provisions of the act in order to obtain coverage for their members in the absence of any statutory basis for that rule. The fund does contend, however, that the presumption that underlies the rule contained in the 2003 memorandum—that single-member limited liability companies are not the employers of their members— is correct, because single-member limited liability companies are not meaningfully distinguishable from sole proprietorships in this regard.[10]

We agree with the plaintiff that nothing in § 31-275 (10) requires single-member limited liability companies to elect to accept the provisions of the act before their members are covered, and, therefore, the commission chairman had no authority to adopt that rule. Indeed, as we indicated, the fund does not seriously contend otherwise. For the reasons that follow, we further conclude that the legislature's choice not to include single-member limited liability companies in the election provision of § 31-275 (10) indicates that the legislature intended that single-member limited liability companies may be employers of their members.

First, it is reasonable to conclude that the legislature adopted the provision of § 31-275 (10) allowing sole

proprietors to elect to adopt the provisions of the act because it otherwise might appear that, in the absence of such a provision, a sole proprietorship would not be considered the employer of the sole proprietor under § 31-275 (10), even though that provision defines "employer" to include "any person . . . ." In turn, it is reasonable to believe that the legislature maintained this view because a sole proprietor and a sole proprietorship are, for all intents and purposes, one and the same entity, and it would be anomalous to conclude that an individual can work under a contract of service with himself. See *National Fire Ins. Co. of Hartford* v. *Beaulieu Co., LLC*, 140 Conn. App. 571, 584, 59 A.3d 393 (2013) (although "sole proprietor" is not defined for purposes of act, "Black's Law Dictionary [9th Ed. 2009] defines 'sole proprietorship' as '[a] business in which *one person . . . operates in his or her personal capacity*' or '[o]wnership of such a business.' " [emphasis added]); 6 L. Larson & T. Robinson, Larson's Workers' Compensation Law (2018) § 76.05 [2], p. 76-13 ("[t]he compensation act cannot be supposed to have contemplated [the] combination of employer and employee status in one person").[11] Thus, the election provision set forth in § 31-275 (10) allowing sole proprietors to elect to accept the provisions of the act effectively creates an *exception* to the rule that only employees are covered by the act, consistent with the policy in favor of broad eligibility for coverage to accomplish the act's humanitarian purpose.[12] See, e.g., *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 432, 994 A.2d 1265 (2010) (act was intended "to be as wide as possible in its scope," with "no employment left out that can practicably be included" [internal quotation marks omitted]); see also *Sullins* v. *United Parcel Service, Inc.*, supra, 315 Conn. 550 (" '[t]he humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation' ").

In contrast to sole proprietorships, however, business entities organized as limited liability companies are entirely distinct from their members. See, e.g., *Wasko* v. *Farley*, 108 Conn. App. 156, 170, 947 A.2d 978 ("[a] limited liability company is a distinct legal entity whose existence is separate from its members"), cert. denied, 289 Conn. 922, 958 A.2d 155 (2008). Thus, it is reasonable to conclude that the legislature chose not to include single-member limited liability companies in the election provision of § 31-275 (10) because it contemplated that the member of a single-member limited liability company *can* work under a contract of service with the company—because the company is a distinct entity—and, therefore, the member *can* be the company's employee, as defined in § 31-275 (9) (A) (i). See 82 Am. Jur. 2d 167, Workers' Compensation § 143 (2013) ("[a]n ownership interest or officer position in a corporate enterprise generally does not prevent an injured

worker from being an 'employee' within the meaning of workers' compensation acts"); Restatement, Employment Law, § 1.03, comment (a), p. 33 (2015) ("[s]ome laws treat controlling owners as employees in order to further specific statutory goals, such as facilitating the collection and calculation of taxes or encouraging owners to make employee benefits broadly available to their workforce").[13] Indeed, if the legislature had believed that the members of single-member limited liability companies cannot be employees of the companies, we can perceive no reason why it would have excluded such members from the opt-in provision of the act, thereby making such members categorically ineligible for coverage. The act as written reveals no such intention to exclude any type of worker. Indeed, the act was intended to "be as wide as possible in its scope," with "no employment left out that can practicably be included." (Internal quotation marks omitted.) *Lopa* v. *Brinker International, Inc.*, supra, 296 Conn. 432. We note in this regard that, if a member of a single-member limited liability company cannot be an employee of the company, such members would appear to be the *only* workers who are categorically ineligible for coverage.[14] See General Statutes § 31-275 (9) (A) (i) ("employee" includes any person who "[h]as entered into or works under any contract of service or apprenticeship with an employer"); General Statutes § 31-275 (10) ("employer" includes "any person, corporation, limited liability company, firm, partnership, voluntary association, joint stock association, the state and any public corporation within the state using the services of one or more employees for pay, or the legal representative of any such employer," and "all contracts of employment . . . shall be conclusively presumed to [provide] . . . [A][t]hat the employer may accept and become bound by the provisions of [the act]"); see also General Statutes § 31-275 (9) (B) (v) (employees of corporation who are corporate officers are covered by act unless they elect to be excluded);[15] General Statutes § 31-275 (10) (sole proprietors may opt to be covered by act);[16] General Statutes § 31-275 (10) (partners are covered by act unless they elect to be excluded). Because we are aware of nothing in the language, history or purpose of the act to indicate that the legislature had any such intent, we conclude that the legislature contemplated that the member of a single-member limited company may be an employee of the company.[17]

In reaching this conclusion, we are mindful that a limited liability company is a hybrid entity "that adopts and combines features of both partnership and corporate forms." (Internal quotation marks omitted.) *418 Meadow Street Associates, LLC* v. *Clean Air Partners, LLC*, 304 Conn. 820, 834 n.13, 43 A.3d 607 (2012). "From the partnership form, the [limited liability company] borrows characteristics of informality of organization and operation, internal governance by contract, direct

participation by members in the company, and no taxation at the entity level. . . . From the corporate form, the [limited liability company] borrows the characteristic of protection of members from . . . liability" similar to the protection enjoyed by corporate shareholders. (Internal quotation marks omitted.) Id. Thus, for purposes of the act, the legislature *could have* concluded that single-member limited liability companies should be treated in the same manner as sole proprietorships and multiple-member limited liability companies in the same manner as partnerships, as the commission chairman indicated in the 2003 memorandum. Indeed, the legislature's choice not to treat limited liability companies in this manner may have potentially negative ramifications for single-member limited liability companies and their members. Specifically, the decision to treat single-member limited liability companies as distinct entities from their members for purposes of the act means that a single-member limited liability company will be statutorily required to obtain coverage for its member even if the member would prefer not to be covered. It is not the function of this court or the commission, however, to "substitute its judgment of what would constitute a wiser provision for the clearly expressed intent of the legislature." (Internal quotation marks omitted.) *Echavarria* v. *National Grange Mutual Ins. Co.*, 275 Conn. 408, 416–17, 880 A.2d 882 (2005). We therefore conclude that the commission chairman did not have the authority to adopt a conclusive presumption that the members of single-member limited liability companies are not their employees, as he did in the 2003 memorandum.

## II

We next consider the plaintiff's claim that the board incorrectly determined that the plaintiff was not Intervale's employee. We agree.

As we explained, the sole basis for the board's conclusion that the plaintiff was not Intervale's employee was its determination that Intervale must be treated as a sole proprietorship as the result of its purported failure to observe the corporate formalities governing limited liability companies when it distributed profits to the plaintiff instead of paying him an hourly salary. We have already rejected this conclusion because the fund made no such claim and the board cited no authority to support it. The board did not address the commissioner's finding that the plaintiff was not Intervale's employee in view of the fact that the plaintiff controlled the means and methods of his own work, which is the fund's position on appeal. Nevertheless, because we are in as good a position as the board to review the commissioner's factual finding concerning this issue, and because neither party objects to our review of the issue, which has been fully briefed, we may address it. Furthermore, because the underlying facts are not in dispute, we

agree with the plaintiff that our review of the commissioner's determination that the plaintiff was not Intervale's employee is de novo. See, e.g., *State* v. *Donald*, 325 Conn. 346, 354, 157 A.3d 1134 (2017) ("[w]hen the facts underlying a claim on appeal are not in dispute . . . that claim is subject to de novo review" [internal quotation marks omitted]).

As we previously indicated, the fund claims that the commissioner correctly determined that the plaintiff is not Intervale's employee because the plaintiff, not Intervale, had "the right to control the means and methods used by the [plaintiff] in the performance of his" services. (Internal quotation marks omitted.) *Doe* v. *Yale University*, supra, 252 Conn. 680. We recognize that the right to control test is the traditional test for determining the existence of an employer-employee relationship. The test generally has been used, however, to distinguish between an independent contractor and an employee, which is not the issue presented in this case. See id., 681 ("The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent." [Internal quotation marks omitted.]). Rather, the issue for us to decide is whether the sole member of a limited liability company who has the right to control the company and who also performs services for the company can be the company's employee. If the right to control test applied in this situation, then, contrary to the apparent legislative intent, the member of a single-member limited liability company could *never* be found to be the company's employee, because a single-member limited liability company can *only* exercise control over the member through the member.

The Missouri Court of Appeals addressed a similar problem in *Lynn* v. *Lloyd A. Lynn, Inc.*, 493 S.W.2d 363 (Mo. App. 1973). In that case, the widow of the sole owner and manager of a corporation who had been killed while performing services for the corporation claimed that the decedent was an employee of the corporation and, as a consequence, that she was eligible for death benefits under the workers' compensation laws of Missouri. See id., 363–64. The Missouri Industrial Commission and the state circuit court concluded that the decedent was not the corporation's employee because he did not satisfy the traditional controllable services test for employment under Missouri law. See id. On appeal, the Missouri Court of Appeals observed that "[t]he policy behind the controllable services test, developed to distinguish between an employee and an independent contractor, was that an independent contractor is only temporarily and peripherally connected with the master's or employer's business." Id., 365. The court concluded that "the controllable services test was inappropriate as applied to executive officers. Such officers, by virtue of their managerial abilities, often accom-

panied by substantial stock ownership, are naturally apt to be under less control in the performance of their duties than the typical employee. But, unlike the independent contractor, the executive officer is intimately and permanently involved in the operation of the business. Accordingly, the criteria by which independent contractor status is determined [are] not adequate to meet the needs of the unique problems created by executive officers of corporations." Id.

The court in *Lynn* concluded that, under Missouri's workers' compensation law, which defined "employee" to include "every person in the service of any employer . . . . under any contract of hire, express or implied, oral or written, or under any appointment or election, including executive officers of corporations"; Mo. Rev. Stat. § 287.020 (1) (1969); the word "employee" included "executive officers . . . irrespective of whether . . . these officers rendered controllable services or exercised control over the services of others. If by reason of their employment they were subjected to the hazards of the occupation or industry, then under the liberal extension of [Missouri's workers' compensation law] and the directive of the [l]egislature contained in [the statutory definition of "employee"], they should be considered employees within the terms of [that law]." *Lynn* v. *Lloyd A. Lynn, Inc.*, supra, 493 S.W.2d 366; see also *Gottlieb* v. *Arrow Door Co.*, 364 Mich. 450, 454, 110 N.W.2d 767 (1961) (individual who was sole incorporator and stockholder of corporation and who had exclusive control over corporation was employee of corporation for purposes of state workers' compensation laws when individual provided services to corporation and was subject to hazards of corporation's business); *McFarland* v. *Bollinger*, 792 S.W.2d 903, 906–907 (Mo. App. 1990) (clarifying that, to qualify as employee for workers' compensation purposes under *Lynn*, it is essential that corporate officer provide services to corporation); cf. *McFarland* v. *Bollinger*, supra, 907 ("[the] court does not believe that the legislature intended that executive officers of corporations were to be counted as employees if they do nothing but lend their name to the position and perform no service for the corporation").

The court in *Lynn* further concluded that, "[t]o hold that the decedent was not an employee at the time of his death because of the office he held and his stock ownership in the corporation is to disregard the separate and distinct legal identities of [the] decedent and [the corporation]. Since [the] defendants have failed to show that the separate identities were used as a subterfuge to defeat public convenience, for the perpetration of a fraud, or as a means to justify a wrong, [the court has] no reason to pierce the corporate veil in these proceedings." *Lynn* v. *Lloyd A. Lynn, Inc.*, supra, 493 S.W.2d 366–67. Accordingly, the court concluded that the decedent was an employee of the corporation.

Id., 367.

We find the reasoning of the court in *Lynn* persuasive and equally applicable to the members of single-member limited liability companies. In particular, we agree that the right to control test is not an appropriate test for determining whether the member of a single-member limited liability company is an employee of the company. Rather, the test is whether the member performed services for the company and was subject to the hazards of the company's business. Cf. General Statutes § 31-275 (9) (A) (i) (defining "employee" as any person who "[h]as entered into or works under any contract of service . . . with an employer").

Because there is no dispute in the present case that the plaintiff provided services to Intervale and was subject to the hazards of Intervale's business, it is clear that the plaintiff was Intervale's employee for purposes of the act.[18] Thus, the board improperly upheld the decision of the commissioner that the plaintiff was not Intervale's employee and that he therefore was not entitled to concurrent employment benefits pursuant to § 31-310 in connection with his employment by Intervale.

The decision of the board is reversed and the case is remanded to the board with direction to reverse the decision of the commissioner dismissing the plaintiff's claim for concurrent employment benefits and to remand the case to the commissioner with direction to grant the plaintiff's claim.

In this opinion the other justices concurred.

* This case originally was argued before a panel of this court consisting of Justices Palmer, Mullins, Kahn, Espinosa and Vertefeuille. Thereafter, Justice Espinosa retired from this court and did not participate in the consideration of the case. Justice Ecker was added to the panel and has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

The listing of justices reflects their seniority status on this court as of date of oral argument.

[1] General Statutes § 31-310 (a) provides in relevant part: "Where the injured employee has worked for more than one employer as of the date of the injury and the average weekly wage received from the employer in whose employ the injured employee was injured, as determined under the provisions of this section, [is] insufficient to obtain the maximum weekly compensation rate from the employer under section 31-309, prevailing as of the date of the injury, the injured employee's average weekly wages shall be calculated upon the basis of wages earned from all such employers in the period of concurrent employment not in excess of fifty-two weeks prior to the date of the injury, but the employer in whose employ the injury occurred shall be liable for all medical and hospital costs and a portion of the compensation rate equal to seventy-five per cent of the average weekly wage paid by the employer to the injured employee, after such earnings have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contribution Act made from such employees' total wages received from such employer during the period of calculation of such average weekly wage, but not less than an amount equal to the minimum compensation rate prevailing as of the date of the injury. The remaining portion of the applicable compensation rate shall be paid from the Second Injury Fund upon submission to the Treasurer by the employer or the employer's insurer of such vouchers and information as the Treasurer may require. . . ."

[2] The city and the fund are both defendants in the present case. The city, however, has not participated in the litigation regarding this issue at any

stage of the proceedings in the case, including on appeal to this court.

[3] The plaintiff appealed to the Appellate Court from the decision of the board, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] "Form 75" is a preprinted form created by the commission that may be used by a sole proprietorship or, after the issuance of the 2003 memorandum, a single-member limited liability company, to notify the commission that the entity is electing to accept the provisions of the act pursuant to General Statutes § 31-275 (10). See footnote 5 of this opinion. The form is entitled "Coverage Election by Sole Proprietor or Single-Member LLC."

[5] General Statutes § 31-275 (10) provides in relevant part: " 'Employer' means any person, corporation, limited liability company, firm, partnership, voluntary association, joint stock associate, the state and any public corporation within the state using the services of one or more employees for pay, or the legal representative of any such employer . . . . A person who is the sole proprietor of a business may accept the provisions of [the act] by notifying the commissioner, in writing, of his intent to do so. If such person accepts the provisions of [the act] he shall be considered to be an employer and shall insure his full liability in accordance with subdivision (2) of subsection (b) of section 31-284. Such person may withdraw his acceptance by giving notice of his withdrawal, in writing, to the commissioner. Any person who is a partner in a business shall be deemed to have accepted the provisions of [the act] and shall insure his full liability in accordance with subdivision (2) of subsection (b) of section 31-284, unless the partnership elects to be excluded from the provisions of [the act] by notice, in writing and by signed agreement of each partner, to the commissioner."

[6] General Statutes § 31-275 (9) (A) provides in relevant part: " 'Employee' means any person who:

"(i) Has entered into or works under any contract of service or apprenticeship with an employer, whether the contract contemplated the performance of duties within or without the state . . . ."

[7] The fund also appears to make no such claim on appeal. The fund does assert that the fact that the plaintiff reported his earnings from Intervale in the same manner as a sole proprietorship for federal tax purposes, which, as the fund acknowledges, he was entitled to do under federal law; see *McNamee* v. *Dept. of the Treasury*, 488 F.3d 100, 109 (2d Cir. 2007) ("[t]he . . . regulations allow the single-owner limited liability company to choose whether to be treated as an association—i.e., a corporation—or to be disregarded as a separate entity" [internal quotation marks omitted]); supports the board's determination that the plaintiff was not Intervale's employee. The fund, however, does not appear to claim—at least not expressly—that electing this method of reporting earnings for federal tax purposes somehow prevents Intervale from claiming the status of a limited liability company for any state law purpose. To the extent that the fund implicitly makes this claim, we reject it. As the court in *McNamee* recognized, "state laws of incorporation control various aspects of business relations; they may affect, but do not necessarily control, federal tax provisions. . . . As a result . . . *single-member* [*limited liability companies*] *are entitled to whatever advantages state law may extend*, but state law cannot abrogate [their owners'] federal tax liability." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 111; cf. *In re Bourbeau Custom Homes, Inc.*, 205 Vt. 42, 52, 171 A.3d 40 (2017) (rejecting suggestion that interpretation of Vermont's unemployment compensation laws should be driven by choice by member of single-member limited liability company to pay federal taxes as sole proprietorship because "[n]othing in the [Vermont] unemployment compensation statute, or the [Vermont] statute creating the [limited liability company] structure, suggests that the [Vermont] [l]egislature intended federal tax law to control how the [unemployment compensation] statute [is to be] applied"). In other words, the fact that a single-member limited liability company elects to have the company disregarded as a separate entity for federal tax purposes does not mean that that limited liability company can no longer claim that status for any state law purpose.

[8] The board cited four of its decisions, namely, *Diaz* v. *Capital Improvements & Management, LLC*, No. 5616, CRB 1-11-1 (January 12, 2012), *Caus* v. *Hug*, No. 5392, CRB 4-08-11 (January 22, 2010), *Bonner* v. *Liberty Home Care Agency*, No. 4945, CRB 6-05-5 (May 12, 2006), and *Dupree* v. *Masters*, No. 1791, CRB 7-93-7 (April 25, 1995). In *Diaz*, the principal of a limited liability company apparently paid an employee with personal checks, and the employee, in turn, paid himself and three other employees, including the claimant, in cash. In addition, the principal's "personal expenses and

bills were paid from the [limited liability company's] checking account . . . ." *Diaz* v. *Capital Improvements & Management, LLC*, supra. The board concluded that, because the principal had "commingled firm assets for personal use and failed to maintain corporate formalities," he was personally liable for the benefits owed to the claimant. Id. In *Caus*, the employer, Paul Hug, operated a number of businesses, one of which was apparently a sole proprietorship and others of which were limited liability companies, and failed to establish which of the businesses had employed the claimant. See *Caus* v. *Hug*, supra. The board concluded that the commissioner reasonably could have concluded that Hug had "commingled the activities of his various businesses and that each firm acted as an alter ego of . . . Hug personally." Id. In *Dupree*, the respondent did not withhold social security or federal income tax from the claimant's wages; rather, the claimant paid his own income taxes and social security taxes at self-employment rates. See *Dupree* v. *Masters*, supra. The board concluded that these facts supported the commissioner's finding that the claimant was not the respondent's employee. Id. *Bonner* v. *Liberty Home Care Agency*, supra, involved the same factual situation as *Dupree*. Thus, none of these cases directly supports the proposition that, if a single-member limited liability company distributes profits to the member or if the member reports earnings from the company in the same manner as a sole proprietorship, the company must be treated as the member's alter ego.

[9] We recognize that neither the commissioner nor the board addressed this issue because each of them determined that, even if Intervale was not required to elect to accept the provisions of the act in order for the plaintiff to be covered, the plaintiff did not meet the definition of "employee" for purposes of the act. Because the question of whether Intervale was required to elect to accept the provisions of the act before the plaintiff could be covered is inextricably intertwined with the question of whether the plaintiff was Intervale's employee, however, and, because the question presents a pure question of law and has been fully briefed by both parties, we are free to address it.

[10] The fund also contends that the presumption underlying the 2003 memorandum is rebuttable. Nothing in the 2003 memorandum suggests, however, that, when a single-member limited liability company does not elect to accept the provisions of the act, the member nevertheless may be covered if the member presents evidence that he or she was an employee of the company. To the contrary, the 2003 memorandum provides that "members of [limited liability companies (LLCs)] that contain only one member (single-member LLCs) should be presumed to be *excluded* from the [a]ct unless they have elected to be covered"; (emphasis in original); and Form 75, which implements the 2003 memorandum, expressly provides that "[t]he [s]ole [p]roprietor or [s]ingle-[m]ember [limited liability company] is NOT covered by the [act], *unless coverage is elected through the use of this form.*" (Emphasis added.) Moreover, if the 2003 memorandum merely created a presumption that may be rebutted by evidence that the member satisfied the definition of "employee" set forth in § 31-275 (9) (A) (i), the 2003 memorandum effectively would be superfluous, inasmuch as the burden of proof is always on a claimant to prove that he or she was an employee. See, e.g., *Gamez-Reyes* v. *Biagi*, 136 Conn. App. 258, 270, 44 A.3d 197 ("[i]t is well established that the claimant has the burden of proving that he is an employee of the employer from whom he seeks compensation"), cert. denied, 306 Conn. 905, 52 A.3d 731 (2012). Finally, it is unclear what evidence, in the fund's view, would be sufficient to rebut the presumption created by the 2003 memorandum. The fund contends that, because the plaintiff necessarily controlled Intervale, Intervale had no right to control him and, therefore, that he cannot be Intervale's employee. That invariably will be the case, however, with single-member limited liability companies. It is therefore apparent that the 2003 memorandum sets forth a conclusive presumption that single-member limited liability companies are not employers of their members, and that that presumption cannot be rebutted by additional evidence. See *Donahue* v. *Veridiem, Inc.*, 291 Conn. 537, 548, 970 A.2d 630 (2009) ("[g]enerally, a conclusive or irrebuttable presumption is [a] presumption that cannot be overcome by any additional evidence *or argument*" [emphasis in original; internal quotation marks omitted]). In other words, the 2003 memorandum sets forth a substantive rule of law. See id. ("[a] conclusive or irrebuttable presumption is . . . a substantive rule of law" [internal quotation marks omitted]).

[11] This statement in Larson's treatise is made in the context of a discussion of the employee status of partners. See 6 L. Larson & T. Robinson, supra,

§ 76.05 [2], p. 76-13. The authors assert that, for purposes of workers' compensation law, a partnership generally "is not . . . an entity separate from its members," and, therefore, the members are not employees of the partnership. (Footnote omitted.) Id. As we noted, however, under the act, partners are deemed to be covered unless the partnership elects to opt out. See General Statutes § 31-275 (10).

[12] In other words, the election provision of § 31-275 (10) does not *create a presumption* that sole proprietors are not covered by the act. If sole proprietors would have been eligible for coverage in the absence of the election provision, the legislature presumably would have provided that they could opt *out* of coverage if it wished to provide them with that choice. Rather, the election provision appears to reflect the fact that, as a matter of substantive law, sole proprietors are not employees of their sole proprietorships and, therefore, would be ineligible for coverage in the absence of a provision allowing them to opt in.

The plaintiff contends, to the contrary, that the board held in *Verrinder* v. *Matthew's Tru Colors Painting & Restoration*, No. 4936, CRB 4-05-4 (December 6, 2006), that an individual can be his own employer and employee. In that case, however, the board merely recognized that, when a sole proprietor has elected to accept the provisions of the act pursuant to § 31-275 (10), the sole proprietorship is *treated as* the sole proprietor's employer and, pursuant to § 31-275 (9) (A) (ii), the sole proprietor is *treated* as an employee under the act. See id. ("[T]he situation [in which] a self-employed individual in the compensation system is acting as both employee and employer is unlikely to result in an adversarial investigation of the claim. However, [in § 31-275 (9) (A) (ii) and (10)] the General Assembly specifically permitted sole proprietors to be defined as 'employers' and to have the concurrent status of both 'employers' and 'employees' . . . ." [Citations omitted.]). The case did not hold that, even in the absence of these statutory provisions, one individual could be treated as both an employer and an employee with respect to himself.

[13] As the fund observes, there is authority for the proposition that a person who works for a business entity that he or she owns or controls is not the entity's employee. See Restatement, supra, § 1.03, comment (a) p. 32 ("[a]n individual who renders services to an enterprise that the individual controls through ownership is not as a general matter treated as an employee of that enterprise for purposes of the laws providing protections or benefits to or imposing obligations on employees"); id., comment (b), p. 33 ("[O]wners of a [limited liability] company that have entrepreneurial control over their own remuneration and activities on the company's behalf are not employees of the company," and, "[i]n partnerships, too, each partner [who] exercises control approximating that of a sole proprietor over his or her remuneration and activities within the partnership is a controlling owner excluded from employee status"). These provisions, however, are not specific to workers' compensation law. The fact that owners of a business entity are not its employees for some purposes, such as determining the owner's tax liability, does not necessarily mean that they are not employees for purposes of the act. We note, for example, that, whereas the Restatement of Employment Law provides that partners do not have employment status, § 31-275 (10) reflects a conclusive presumption that partners *are* employees of the partnership unless the partnership elects to be excluded from the provisions of the act.

[14] We recognize that, when the commission chairman drafted the 2003 memorandum, he attempted to mitigate this policy concern by providing that single-member limited liability companies could elect to accept the provisions of the act if the member wanted to be covered. As the fund essentially concedes on appeal, however, if such members were not employees under the act, and the legislature chose not to allow them to elect to accept the provisions of the act, neither the commission chairman nor this court would have the authority to mitigate that arguably harsh result by effectively changing the plain terms of the act.

[15] As we discuss more fully hereinafter, a corporate officer who provides no services to the corporation, and is not subject to the hazards of the corporation's business, is not the corporation's employee.

[16] Presumably, this provision would allow any independent contractor to elect to accept the provisions of the act. Cf. *Pulsifer* v. *Pueblo Professional Contractors, Inc.*, 161 P.3d 656, 660 n.5 (Colo. 2007) ("[t]he term 'independent contractor' describes the relationship with those for whom work is done, whereas 'sole proprietor' describes the organization of the business with whom the contract is made").

[17] We address the test for determining whether the member of a single-member limited liability company is the company's employee in part II of this opinion.

[18] To the extent that the fund claims that the plaintiff was not Intervale's employee for purposes of the act because the commissioner found that it was "questionable as to whether the [plaintiff] intended to cover himself as an employee when [Intervale] procured [the workers' compensation insurance policy]," we disagree. Even if we were to assume that the plaintiff did not intend to obtain coverage for himself, the plaintiff's subjective beliefs regarding his employee status at the time he obtained the policy have no direct bearing on the question of whether he was covered by the act as a matter of law.